# PENNSYLVANIA R. R. CO. *v.* HUGHES.

### ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 56.   Argued November 5, 1903.—Decided December 7, 1903.

A bill of lading was given in New York State for transporting a horse to a point in Pennsylvania, containing a clause limiting the carrier's liability to a stipulated value in consideration of the rate paid, the shipper having been offered a bill of lading without such limitation on payment of a higher rate signed a memorandum accepting the contract at the lower rate. The common law as interpreted by the courts of New York and the Federal courts permits a common carrier to limit by contract his liability for his own negligence; as interpreted by the courts of Pennsylvania he cannot so limit it.   On writ of error to review a judgment recovered in a state court of Pennsylvania by the shipper for damages caused by the negligence of the carrier in excess of the limited amount:

*Held* that the jurisdiction of this court to review a judgment of a state court under sec. 709, U. S. Revised Statutes, depends upon the assertion of a right, privilege or immunity under the Federal Constitution or laws set up and denied in the state courts.

*Held* that the highest court of a State may administer the common law ac-

cording to its own understanding and interpretation thereof, being only amenable to review in this court where some immunity or privilege created by the Federal power has been asserted and denied.

*Held* that while Congress under its power may provide for contracts for interstate commerce permitting the carrier to limit its liability to a stipulated valuation, it does not appear that Congress has, up to the present time, sanctioned contracts of this nature; and, in the absence of Congressional legislation on the subject, a State may require common carriers, although in the execution of interstate business, to be liable for the whole loss resulting from their own negligence, a contract to the contrary notwithstanding.

There is no difference in the application of a principle based on the manner in which a State requires a degree of care and responsibility whether enacted into a statute or resulting from the rules of law enforced in its courts.

THE defendants in error brought suit in the Court of Common Pleas of Philadelphia against the Pennsylvania Railroad Company, to recover for injuries to a horse shipped by them from Albany in the State of New York to Cynwyd, in the State of Pennsylvania. The shipment was under a bill of lading of the New York Central and Hudson River Railroad Company, bearing date of August 10, 1900. It recited the receipt of the horse—

"for transportation from —— to destination, if on the said carrier's line of railroad otherwise to the place where said live stock is to be received by the connecting carriers for transportation to or toward destination, and that the same has been received by said carrier for itself and on behalf of connecting carriers, for transportation, subject to the official tariffs, classifications and rules of the said company, and upon the following terms and conditions, which are admitted and accepted by the said shipper as just and reasonable, viz:

"That said shipper, or the consignee, is to pay freight thereon to the said carrier at the rate of — per —, which is the lower published tariff rate, upon the express condition that the carrier assumes liability on the said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation of the said animals, and beyond which valuation neither the said carrier

nor any connecting carrier shall be liable in any event, whether the loss or damage occur through the negligence of the said carrier or connecting carriers, or their employés or otherwise.

"If horses or mules—not exceeding one hundred dollars each."

The through rate of freight was not filled out in the blanks in the shipping receipt or the bill of lading, but was collected by the agent of the Pennsylvania Railroad Company at Cynwyd, and it appears was the reduced tariff rate usually charged on such shipments where the limited liability clause above recited is inserted. The shipper signed the bill of lading, which contained the following stipulations:

"Thomas Grady does hereby acknowledge that he had the option of shipping the above-described live stock at a higher rate of freight according to the official tariffs, classifications and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies, as common carriers of the said live stock, upon their respective roads and lines, but has voluntarily decided to ship the same under this contract at the reduced rate of freight above first mentioned."

The agreement further provided:

"No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either or which events such lower value shall be the maximum price to govern such computation."

Upon the trial the jury returned a verdict in favor of the plaintiff for $10,000 and judgment was rendered accordingly. The horse was transported in safety to the end of the line of the receiving carrier and delivered to the defendant company,

and injured while the car in which he was shipped was standing on the track of the Pennsylvania Railroad Company in the city of Philadelphia, it being run into by heavily laden cars.

Upon appeal to the Supreme Court of Pennsylvania, the judgment was affirmed. 202 Pa. St. 222.

*Mr. John G. Johnson* for plaintiff in error:

The common law of the United States as interpreted by this court permits carriers, in the course of interstate commerce, in consideration of making a reduced rate, to limit their liability to a designated valuation. *Hart* v. *P. R. R. Co.*, 112 U. S. 331, and cases cited, in which the rule is laid down which has been sustained by later decisions. *Phœnix Ins. Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312; *Liverpool Steam Co.* v. *Phœnix Ins. Co.*, 129 U. S. 397; *New York &c. R. R. Co.* v. *Estill*, 147 U. S. 591; *Primrose* v. *West. Un. Tel.*, 154 U. S. 1; *Chicago, Milwaukee &c. Ry. Co.* v. *Solan*, 169 U. S. 133; *Calderon* v. *Atlas Steamship Co.*, 170 U. S. 272; and *Queen of the Pacific*, 180 U. S. 49.

In reaching its conclusion, this court interpreted the common law of the United States as the same exists in every State, including the State of Pennsylvania. *West. Un. Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 101.

A contract for an interstate transportation, especially one valid where made, is not subject to inconsistent public policies nor to any other public policy than that of the United States. *Morgan* v. *New Orleans &c. R. R. Co.*, 2 Woods, 244; *S. C.*, 17 Fed. Cas. 754, cited in *Liverpool Co.* v. *Phœnix Ins. Co.*, 129 U. S. 397, and see *Hale* v. *Navigation Co.*, 15 Connecticut, 538.

There is no public policy such as was supposed to exist by the learned trial judge. This court has so held and the courts of Pennsylvania have refused to enforce contracts exclusively within the jurisdiction of the Federal laws, and which, under such laws, are valid. If, therefore, a public policy in any State interferes with interstate commerce it must yield to the superior rights of those interested in the latter. Though such public

policy may control commerce within the State, it is utterly inefficacious as regards commerce between the States.

The bill of lading in the present case was an entire contract stipulating for an entire transportation from one State to another, though performable at different points by different connecting carriers. It could not be held valid in one part and invalid in another, inasmuch as one consideration was paid for the whole service. The shipper received in New York, for the transportation through New York, a benefit which, under the laws of New York, resulted from the contract. This consideration sustained the contract in all its parts. An entire contract is not subject to several inconsistent public policies.

A state law or state policy which interferes with or regulates interstate commerce, is void because it is exclusively within the power of Congress to regulate such commerce and such power has been exercised by the Interstate Commerce Act of 1887.

A State cannot interfere, whether by an act passed before the Interstate Commerce Act, or thereafter, or by its so-called common law, or by its so-called public policy. If there is any public policy of Pennsylvania which condemns the contract, it cannot be one found in the common law of the United States. This court has so said. It must be the result of something peculiar to the law of Pennsylvania. The purpose of the Interstate Commerce Act of 1887 and as amended was to compel the exaction of reasonable rates; to bring about shipments connectedly and continuously from one State to another; to bring about by agreements between the carriers the establishment of joint rates; to compel the publication of such joint rates for through traffic; and to prohibit departures from the rates as published. See original act 24 Stats. U. S. 379, 382, and amendments, 25 Stat. 855, 856.

No State could prescribe to a common carrier engaged in interstate transportation its rates for such transportation. It can compel neither the raising nor the lowering of the same. It necessarily raises the rate of interstate carriage if it deprives

the carrier and shipper of the ability to make bargains upon terms mutually satisfactory, which bring about a reduction of the cost of transportation. *Hall* v. *DeCuir*, 95 U. S. 485; *Wabash &c. Ry. Co.* v. *Illinois*, 118 U. S. 557, 572, and cases cited; *C. C. C. & St. L. Ry. Co.* v. *Illinois*, 177 U. S. 514.

A state statute, valid before an act of Congress, must yield to the latter. *Kaukauna Co.* v. *Green Bay &c. Canal*, 142 U. S. 254.

The Federal question involved in this appeal is properly raised upon the record. *M. K. & T. Ry. Co.* v. *Elliott*, 184 U. S. 533, and cases cited; *Sully* v. *Am. Nat. Bank*, 178 U. S. 298; *Erie R. R. Co.* v. *Purdy*, 185 U. S. 153; *Fire Assn.* v. *New York*, 119 U. S. 110, 115; *Jacobi* v. *Alabama*, 187 U. S. 133; *Home for Incurables* v. *New York*, 187 U. S. 155; *Detroit &c. Ry. Co.* v. *Osborn*, 189 U. S. 383; *Kaukauna Co.* v. *Canal*, 142 U. S. 254, and cases cited p. 269.

*Mr. A. S. L. Shields* for defendants in error:

This court has no jurisdiction to review the judgment of the Supreme Court of Pennsylvania. The Federal question was not raised on the trial and the Supreme Court of the State never considers questions not raised on the trial. *Walls* v. *Campbell*, 125 Pennsylvania, 346; *Hartley* v. *Decker*, 89 Pennsylvania, 470; *Bank* v. *Schuylkill Co.*, 190 Pennsylvania, 188.

The jurisdiction of this court to review the judgment of the highest court of a State is purely statutory, and will in all cases be strictly confined to questions arising under the provisions of section 709 of the Revised Statutes of the United States. *Beals* v. *Cone*, 188 U. S. 184; *Hamblin* v. *Western Land Co.*, 147 U. S. 531, and cases cited; *New Orleans W. W. Co.* v. *Louisiana*, 185 U. S. 336; *Equitable Life* v. *Brown*, 187 U. S. 308; *San José Land Co.* v. *San José Ranch Co.*, 189 U. S. 177; *Onandago Nation* v. *Thacher*, 189 U. S. 306.

Nothing in the rule of Pennsylvania law applied in this case justifies the assumption that it interferes with or regulates interstate commerce.

The rule of Pennsylvania law applied here is that the policy of her laws prohibits a corporation created by her and transacting the business of a common carrier within her borders from limiting its liability for negligence by any form of contract, and that this rule will be applied by Pennsylvania courts to a contract made by a Pennsylvania corporation through an agent in another State. *Forepaugh* v. *Delaware &c. R. Co.,* 128 Pennsylvania, 217, 230; *Fairchild* v. *Philadelphia &c. R. Co.,* 148 Pennsylvania, 527, as explained in the opinion of the Pennsylvania Supreme Court in the case at bar. *Hart* v. *P. R. R. Co.,* 112 U. S. 331, not applicable.

The Federal power to regulate interstate commerce, however absolute and exclusive, is not a complete denial of the power of a State to control its own corporations engaged in interstate commerce. Many state laws in the nature of police regulations of such corporations have been sustained, although it was admitted that such laws had an incidental effect upon interstate commerce. A state statute prohibiting a corporation from exempting itself from liability as a common carrier by any form of contract, has been sustained as not amounting to a regulation of interstate commerce, and as within the power of the State to adopt, in spite of its incidental effect upon interstate commerce. *Chicago, Milwaukee &c. Ry.* v. *Solan,* 169 U. S. 133, and cases cited.

The case just cited has been affirmed several times. *Richmond, etc., R. Co.* v. *Patterson Tobacco Co.,* 169 U. S. 311, 315; *Missouri, etc., Ry. Co.* v. *Haber,* 169 U. S. 613, 627; *Calderon* v. *Atlas Steamship Co.,* 170 U. S. 272, 282; *Lake Shore, etc., Ry. Co.* v. *Ohio,* 173 U. S. 285, 296; *Cleveland, etc., Ry. Co.* v. *Illinois,* 177 U. S. 514, 517.

The alleged right to sue out a writ or error in this court depended upon the existence of a Federal question, which was decided adversely to the appellant by the Pennsylvania Supreme Court. Since no such Federal question arose in the case, this court will decline to interfere with the policy of Pennsylvania law as declared by the highest court of that State.

Appellant only has succeeded in showing that a conflict exists in the policy of the law administered by two separate tribunals, each of which is supreme within its own sphere and has failed entirely in the effort to show that he has any standing in this court.

The appellant cannot import a Federal question into the facts of this case by arguments drawn from "the common law of the United States" which is said to promulgate "the public policy of the United States."

The Supreme Court of Pennsylvania has respectfully asserted its right to an independent opinion upon the rule laid down in *Hart* v. *P. R. R. Co.,* 112 U. S. 331; *Grogan* v. *Adams Express Co.,* 114 Pennsylvania, 523, 528.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The right to review the judgment of the Supreme Court of Pennsylvania herein depends upon the proper assertion of a right or privilege under the Federal Constitution or statutes which was denied to the plaintiff in error by the adverse holding of the state court.

Upon the trial in the Common Pleas Court, it was contended that the special contract above recited limited the recovery of the plaintiff to the sum of one hundred dollars. The court refused to so charge, but, holding that the policy and law of Pennsylvania, as declared by her courts of last resort, did not permit such limitations on the liability of common carriers, left to the jury to determine the value of the horse and the question of the negligence of the defendant.

In view of being carried to the Supreme Court of Pennsylvania, two errors were assigned to the refusal of the court to charge:

"1. That it was lawful in the State of New York for the carrier to limit its liability by a special contract for an injury resulting from its negligence; that said contract having been

for a through consignment from Albany to Cynwyd, a place within this State, said contract must be considered in its entirety, and is incapable of divisibility; that said contract having stipulated for an agreed valuation of the stock shipped, the parties must be governed by its terms throughout the entire route, as said contract must be interpreted and enforced here by the law of the place where it was made, and within which State it is partly performed; and that consequently the plaintiff is not entitled to recover in excess of the valuation agreed upon by the parties at the time of shipment.

"2. That the plaintiff is not entitled to recover in excess of $100."

Neither of these assignments of error presents a Federal question in such sense as to give this court jurisdiction to review the judgment of the state court under section 709 of the Revised Statutes of the United States. Nothing is better settled in Federal jurisprudence than that the jurisdiction of this court in such cases depends upon the assertion of a right, title, privilege or immunity under the Federal Constitution or laws set up and denied in the state courts. *Beals* v. *Cone*, 188 U. S. 184.

The first error assigned in the Common Pleas Court raised the question as to the law of the contract. It does not assert that any Federal right was invaded or denied. It seems to have been conceded at the trial that the law of the State of New York where the contract was made permitted the making of a contract limiting the liability of the carrier to the agreed valuation in consideration of the lower freight rate for carriage, the shipper having the opportunity to have the larger liability for the value of the goods if the higher rate of freight for carriage was paid. This rule also prevails in the courts of the United States, *Hart* v. *Railroad*, 112 U. S. 331, wherein it was held that a contract fairly made and signed by the shipper, agreeing on a valuation of the property carried, with a rate of freight based on such valuation, on the condition that the carrier assume liability only to the extent of such agreed valua-

tion, in case of loss by the negligence of the carrier, will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier is responsible and the freight received, and of protecting the carrier against extravagant valuations. But this is not a question of Federal law wherein the decision of the highest Federal tribunal is of conclusive authority. In *Grogan* v. *Adams Express Co.*, 114 Pa. St. 523, the Supreme Court of Pennsylvania expressly declined to follow the rule laid down in *Hart* v. *Railroad*, adhering to its own declared doctrine denying the right of a common carrier to thus limit its liability for injuries resulting from negligence. The cases are numerous and conflicting, different rules prevailing in different States. The Federal courts in cases of which they have jurisdiction will doubtless continue to follow the rule of the *Hart* case, but the highest court of Pennsylvania may administer the common law according to its understanding and interpretation of it, being only amenable to review in the Federal Supreme Court where some right, title, immunity or privilege, the creation of the Federal power, has been asserted and denied. *Bethell* v. *Demaret*, 10 Wall. 537; *Delmas* v. *Ins. Co.*, 14 Wall. 661; *Ins. Co.* v. *Hendren*, 92 U. S. 286; *United States* v. *Thompson*, 93 U. S. 587.

In the Supreme Court of Pennsylvania a further assignment of error was made as follows:

"III. The learned court below erred in entering judgment in conflict with the act of Congress of February 4, 1887, entitled 'An act to regulate commerce.' Section 1 of said act clearly provides that where the transportation is from one State to another, under a through bill of lading, its provisions shall be carried out, unless it be in conflict with a statute of the State in which it may be performed, or in conflict with the policy of the United States as laid down in the Federal courts, and that, as the contract was valid in the place where made, and, as there is no statute in Pennsylvania prohibitory of an agreed valuation to establish a rate, and as it is consistent with the policy of the United States as declared by the Federal

courts, the judgment should have been for the valuation mentioned in the contract."

Of this assignment of error, Mr. Justice Potter, delivering the opinion of the Supreme Court of Pennsylvania, said (p. 229):

"The third assignment of error suggests that the entry of judgment is in conflict with the interstate commerce act of Congress. This seems to be an afterthought, as there is no indication in the record that this question was raised or considered in the court below. It is not apparent how the act can have any application to this case. It contains nothing bearing upon the validity of a contract limiting the liability of a railroad for loss or injury caused by negligence. The object of the act seems to be to secure continuous carriage, and uniform rates, and to compel the furnishing of equal facilities. We cannot see that the entry of judgment in this case interferes in any way with the legitimate exercise of interstate commerce."

Upon the authority of *Missouri, Kansas &c. R. R. Co.* v. *Elliott,* 184 U. S. 530, it may be admitted that the question of the decision of the state court being in contravention of the legislation of Congress to regulate interstate commerce, was sufficiently made, and the adverse decision to the party claiming the benefit of that act, gives rise to the right of review here. In refusing to limit the recovery to the valuation agreed upon, did the state court deny to the company a right or privilege secured by the interstate commerce law? It may be assumed that under the broad power conferred upon Congress over interstate commerce as defined in repeated decisions of this court, it would be lawful for that body to make provision as to contracts for interstate carriage, permitting the carrier to limit its liability to a particular sum in consideration of lower freight rates for transportation. But upon examination of the terms of the law relied upon we fail to find any such provision therein. The sections of the interstate commerce law relied upon by the learned counsel for plaintiff in error, 24 Stat. at L., 379, 382; 25 U. S. Stat. at L., 855, provide for equal

facilities to shippers for the interchange of traffic; for non-discrimination in freight rates; for keeping schedules of rates open to public inspection; for posting the same in public places, with certain particulars as to charges, rules and regulations; for the publication of joint tariff rates for continuous transportation over one or more lines, to be made public when directed by the Interstate Commerce Commission; against advances in joint tariff rates except after ten days' notice to the commission; against reduction of joint tariff rates except after three days' like notice; making it unlawful for any party to a joint tariff to receive or demand a greater or less compensation for the transportation of property between points as to which a joint tariff is made different than is specified in the schedule filed with the commission; giving remedies for the enforcement of the foregoing provisions, and providing penalties for their violation; making it unlawful to prevent continuous carriage, and providing that no break of bulk, stoppage or interruption by the carrier, unless made in good faith for some necessary purpose without intention to evade the act, shall prevent the carriage of freights from being treated as one continuous carriage from the place of shipment to the place of destination.

While under these provisions it may be said that Congress has made it obligatory to provide proper facilities for interstate carriage of freight, and has prevented carriers from obstructing continuous shipments on interstate lines, we look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate upon it, is there any valid objection to the State enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?

It is well settled that the State may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate traffic.

In *M. K. & T. Ry.* v. *Haber*, 169 U. S. 613, 635, after review-ing previous cases in this court, Mr. Justice Harlan, delivering the opinion of the court, says:

"These cases all proceed upon the ground that the regulation of the enjoyment of the relative rights, and the performance of the duties, of all persons within the jurisdiction of a State, belong primarily to such State under its reserved power to provide for the safety of all persons and property within its limits; and that even if the subject of such regulations be one that may be taken under the exclusive control of Congress, and be reached by national legislation, any action taken by the State upon that subject that does not directly interfere with rights secured by the Constitution of the United States or by some valid act of Congress, must be respected until Congress intervenes."

In the absence of Congressional legislation upon the subject, an act of the legislature of Alabama, to require locomotive engineers to be examined and licensed by a board to be ap-pointed by the governor for that purpose, was sustained in *Smith* v. *Alabama*, 124 U. S. 465.

An enumeration of the instances in which this court has sustained the validity of local laws intended to promote the safety and comfort of passengers, employés, persons crossing railroad tracks and adjacent property owners, is given in the opinion by Mr. Justice Brown, in *Cleveland &c. Ry. Co.* v. *Illinois*, 177 U. S. 514, 516.

The case of *Chicago, Milwaukee &c. Ry. Co.* v. *Solan*, 169 U. S. 133, is, in our opinion, virtually decisive of the question made upon this branch of the case. In that case cattle were loaded at Rock Valley, Iowa, to be shipped to Chicago. The contract, as here, was for interstate transportation. An injury happened to the drover in charge of the cattle in Iowa, due to the negligence of the transporting company. The shipper had signed a contract providing: "That the company shall in no event be liable to the owner or person in charge of said stock for any injury to his person in any amount exceeding the sum of $500.00." The company averred and offered to prove

that, in view of this limited liability, it had agreed to transport the cattle at a reduced rate. The statute of Iowa provided: "No contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons. or property by railway from liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into." Iowa Code of 1873, sec. 1308. The trial court charged that the limitation contained in the contract was void, and a verdict of $1000.00 damages was returned. A judgment on the verdict was affirmed in the Supreme Court of Iowa. In delivering the opinion of this court, Mr. Justice Gray said (pp. 137, 138):

"A carrier exercising his calling within a particular State although engaged in the business of interstate commerce, is answerable, according to the law of the State, for acts of nonfeasance or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. It is equally within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the State has the power to redress and to punish. The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits. . . . The statute now

in question, so far as it concerns liability for injuries happening within the State of Iowa—which is the only matter presented for decision in this case—clearly comes within the same principles. It is in no just sense a regulation of commerce. It does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares or freight. Its whole object and effect are to make it more sure that railroad companies shall perform the duty, resting upon them by virtue of their employment as common carriers, to use the utmost care and diligence in the transportation of passengers and goods."

It is true that this language was used of a statute of Iowa enacting a rule of obligation for common carriers in that State. But the principle recognized is that in the absence of Congressional legislation upon the subject, a State may require a common carrier, although in the execution of a contract for interstate carriage, to use great care and diligence in the carrying of passengers and transportation of goods, and to be liable for the whole loss resulting from negligence in the discharge of its duties.

We can see no difference in the application of the principle based upon the manner in which the State requires this degree of care and responsibility, whether enacted into a statute or resulting from the rules of law enforced in the state courts. The State has a right to promote the welfare and safety of those within its jurisdiction by requiring common carriers to be responsible to the full measure of the loss resulting from their negligence, a contract to the contrary notwithstanding. This requirement in the case just cited is held not to be an unlawful attempt to regulate interstate commerce in the absence of Congressional action providing a different measure of liability when contracts, such as the one now before us, are made in relation to interstate carriage. Its pertinence to the case under consideration renders further discussion unnecessary.

The judgment of the Supreme Court of Pennsylvania is

*Affirmed.*