COMMERCIAL MILLING CO. *v.* WESTERN UNION
TELEGRAPH CO.

TELEGRAPH COMPANIES—NEGLIGENCE— LIABILITY — STATUTE — INTERSTATE COMMERCE.

In this case, involving the validity and effect of Act No. 195, Pub. Acts 1893, prohibiting telegraph companies from limiting their liability for negligence in the transmission of messages, as applied to contracts to deliver messages beyond the limits of this State, a judgment for plaintiff for damages for negligence occurring beyond the limits of this State is affirmed by a divided court; Mr. Justice OSTRANDER, with whom concur Justices BLAIR, MOORE, and MCALVAY, writing for affirmance on the ground that the contract to deliver the message was a Michigan contract, that the statute does not interfere with interstate commerce, and does not impair defendant's right of contract; Mr. Justice CARPENTER, with whom concur Chief Justice GRANT, and Justices MONTGOMERY and HOOKER, writing for reversal on the ground that the statute, properly construed, has no application to a contract for service to be performed in part beyond the limits of the State, and that the statute as applied to the contract in question constitutes an interference with interstate commerce.

Error to Wayne; Hosmer, J.    Submitted February 20,

1907. - (Docket No. 82.) Reargued October 8, 1908. (Docket No. 3.) Decided March 17, 1908.

Assumpsit by the Commercial Milling Company against the Western Union Telegraph Company for failure to deliver a message. There was judgment for plaintiff, and defendant brings error. Affirmed by a divided court.

*Corliss, Leete & Joslyn* (*Paul B. Moody*, of counsel), for appellant.

*Wilkinson & Younglove*, for appellee.

OSTRANDER, J. In point of time, the statute considered here was passed after this court had, in the absence of a statute, held that regulations similar to the one in question, limiting the liability of a telegraph company for mistakes and delays in transmitting messages and for failures to deliver them, were not unreasonable. The statute is entitled:

"An act to prescribe the duties of telegraph companies, incorporated either within or without this State, relative to the transmission of messages, and to provide for the recovery of damages for negligence in the performance of such duties." Act No. 195, Pub. Acts 1893.

The duties of telegraph companies with respect to the transmission of messages arise not alone upon the terms of express contracts which they make, but, also, upon the nature of the business carried on and the interest of the public in the manner of conducting the business. They are not common carriers and they would not, at common law, be liable for mistakes or for delays or failures for which they were not, exercising proper care, responsible. It must be assumed that the legislature, taking into account this rule of law and the one established by this court, and already referred to, attempted to change, not the rule affecting liability for such miscarriages as proper care would have prevented, but the rule that for miscarriages for which they were responsible they might limit

liability by contract or by conditions imposed upon senders
of messages.   If this statute is not considered to have this
effect, it seems an entirely useless and ineffectual legisla-
tive effort.   In reaching this conclusion, neither the rea-
soning employed nor the authority of the ruling made in
*McMillan* v. *Railroad Co.*, 16 Mich. 79, is questioned.
Assuming the intent and the effect of the legislation to be
what I have stated it to be, it follows that the word neg-
ligence, employed in the statute, does not mean a tort or
wrong of defendant distinct from its express or implied
contract obligations, but it means such a failure to per-
form its duty as at the common law would render it liable
for the consequences.   It must be held that the proper
construction of the statute and its effect is to forbid a lim-
itation of liability for the consequences of those miscar-
riages for which at common law such companies are liable,
and to this extent to make void the stipulation contained
in the contract, which reads:

" It is agreed that the company shall not be liable for
mistakes or delays in the transmission or delivery or for
nondelivery of any unrepeated message beyond the
amount received for sending the same.    *    *    * "

The declaration of the plaintiff is in assumpsit and
counts upon the contract and avers breach thereof.   The
message was delivered by plaintiff at Detroit, Michigan,
addressed to a corporation in Kansas City, Missouri.
The evidence shows the message was transmitted by de-
fendant to its Chicago office, and, fairly, that it was sent
no further.   It was not delivered at Kansas City.   The
reason for failure to deliver was, it may be inferred, fail-
ure to transmit beyond Chicago.   No reason appears for
failure to so transmit.   Plaintiff, during the same day
that the message in question was sent and was lost, sent to
and received from the same party at Kansas City various
messages by defendant's service.   The jury found, and
were warranted in so doing, that the miscarriage was the
consequence of defendant's negligence.

I am of opinion that the legislature intended its ac-

tion to be coextensive with its authority to act, and that the statute should be given the broadest possible application. The case presented, then, is this: The contract was made in this State, is single, involves in its performance service of defendant within and without this State, for a single charge. It may be assumed that the service which was performed within the State was perfect and that miscarriage occurred beyond its boundaries. For the consequences of the miscarriage, a breach of common-law and of contract duty, the plaintiff, who sent the message, has brought a suit upon the contract in a court of this State. Defendant insists that its liability for the consequences of its miscarriage is to be determined by the stipulation, found in the contract. By the law of the State, the stipulation is of no force or effect. The court so declared. It is contended here that in so doing the court was in error. It will be well to have in mind the effect of the statute as it was applied by the trial court. Undoubtedly, it was the application of a local law to the contract. But the local law does not attempt to state, measure, or define, any duty of defendant, or to establish, define, or fix, the consequences of its miscarriage. The liability of defendant is established without reference to the statute. It is when it asks to be discharged therefrom, by giving effect to the stipulation, that the local law becomes, if at all, effective. These considerations answer those objections which are based upon the notion that the local law has been given extraterritorial effect, and they require, also, that this case and *Western Union Tel. Co. v. Pendleton*, 122 U. S. 347, shall be distinguished.

But, it is said, the contract is for interstate service, which fact furnishes a controlling reason why the local law may not be given effect. It seems clear that the application of the statute does not deny to defendant a right, privilege, or immunity created by Federal authority simply because it denies, where formerly the law of the State affirmed, as the law of the Federal courts does now affirm, the validity of the stipulation. *Western Union*

*Tel. Co.* v. *Carew*, 15 Mich. 525; *Primrose* v. *Telegraph Co.*, 154 U. S. 1.   The rule referred to was arrived at, in both jurisdictions, by the statement and the application of common-law principles.   In neither jurisdiction did the rule excuse the nonperformance of contracts or, except by agreement lawfully entered into, avoid the consequences of negligent performance thereof.   The adoption of the rule by the Federal courts conferred upon the defendant no right, privilege, or immunity created by Federal authority.   A reversal of the rule would take away no such right.   If this court should be of opinion that the rule of the *Carew Case* should be denied and that sound public policy, in view of changed conditions, prohibited the defendant from limiting its liability for its negligence, by contract, condition, rule, or stipulation, the application of the announced rule to the present case would have required a denial of defendant's contention. No different question is presented when the decision of the State court is reached by applying a statute of the State.

The statute as applied by the court below does not, in fact, regulate commerce among the several States, interfere with it in any way, tax or burden it, place obstacles in the way of entering into or performing contracts of commerce.   If, as so given effect, the statute is invalid as an exercise of power belonging to the Congress, it is because the silence of Congress upon the subject is equivalent to an express enactment that the subject should be let alone.   That Congress has not acted is plain, and the ruling of the court below was not in contravention of any Federal statute.   It may be admitted that the constitutional power of Congress over commerce among the States would sustain a Federal law fixing the terms of contracts for interstate telegraphic service, including a rule of liability of the companies for negligence.   In the absence of such legislation, the judgments of State courts refusing to give effect to similar stipulations in contracts for interstate transportation, have twice been affirmed by the Su-

preme Court of the United States, although such stipulations are, in cases coming under the jurisdiction of Federal courts, held to be valid. *Pennsylvania R. Co.* v. *Hughes*, 191 U. S. 477; *Chicago, etc., R. Co.* v. *Solan*, 169 U. S. 133. It is true that the actions in both of these cases were predicated of a tort, a wrong, and were brought in the States, respectively, in which the negligent injury occurred. But in each case the stipulation relied upon by the defendant company was, in terms, agreed to by the plaintiff, in a contract for interstate transportation. It was the agreed measure of plaintiff's recovery. In one case the stipulation was prohibited by a statute of the State where the contract was made and sought to be enforced, in the other it was valid in the State where it was made and was held to be invalid, by judicial interpretation, in another State. These cases seem to lay down the rule that where a carrier, or connecting carriers, under a single contract for carriage, transports persons or goods through various States, such a stipulation as is here in question may be enforced, or its validity denied, in either of the States in which a specific act of negligence, and resulting damage, occurs, according to the law of that State. If there had been Federal legislation fixing the stipulation as a part of the contract, the judgments in both of these cases must have been reversed.

What has been said disposes, adversely to appellant, of the contention that its right to freely make contracts has been invaded. I am not convinced that the court below was in error in determining the rights of the parties to this contract according to the law of the State. By that law the stipulation which defendant asks to have enforced is void. I am, therefore, for affirmance of the judgment.

BLAIR, MOORE, and MCALVAY, JJ., concurred with OSTRANDER, J.

CARPENTER, J. In the circuit court the plaintiff recovered a judgment of $960 as the damages resulting from defendant's failure to deliver a telegram sent from

Detroit, Michigan, to Kansas City, Missouri. Defendant promptly transmitted this telegram to its relay station in Chicago, and there it was received within a minute or two after it was filed in Detroit. What became of it afterwards we know nothing, except this: It was not delivered. This telegram was written upon a blank, upon the face of which appeared the following direction:

" Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to."

It was signed by plaintiff's president and general manager. Among the conditions referred to upon the back of said blank was this:

" It is agreed   *   *   *   that the said company shall not be liable   *   *   *   for nondelivery of any unrepeated message beyond the amount received for sending the same."

Was this agreement valid ? That is the material question to be determined in this case. The trial court held that it was not. He held it was prohibited by section 1 of Act No. 195 of the Public Acts of 1893. That section reads as follows:

" That it shall be the duty of all telegraph companies incorporated either within or without this State, doing business within this State, to receive dispatches from and for other telegraph companies' lines, and from and for any individual, and on payment of their usual charges for individuals for transmitting dispatches, as established by the rules and regulations of such telegraph companies, to transmit the same with impartiality and good faith. Such telegraph companies shall be liable for any mistakes, errors or delays in the transmission or delivery, or for the nondelivery of any repeated or nonrepeated message, in damages to the amount which such person or persons may sustain by reason of mistakes, errors or delays in the transmission or delivery, due to negligence of such company, or for the nondelivery of any such dispatch, due to negligence of such telegraph company or its agents, to be recovered with costs of suit, by the person or persons sustaining such damage."

Assuming, though not deciding, that the legislature of the State of Michigan, in enacting the law above set forth, intended, to the extent of its authority, to prohibit the making of such contracts as that in question,—and upon this assumption only can the plaintiff succeed,—the question arises whether the statute, construed in accordance with this intention, can have any application to the contract in question. That is a contract whereby the defendant agreed to transmit for the plaintiff a message from Detroit, Michigan, to Kansas City, Missouri. In performing this contract, defendant was engaged in interstate commerce. In the absence of a prohibitory statute, the parties had a right to embody in said contract the provision limiting liability under consideration. This is settled by our own decisions. *Western Union Tel. Co.* v. *Carew,* 15 Mich. 525; *Birkett* v. *Telegraph Co.,* 103 Mich. 361 (33 L. R. A. 404); *Jacob* v. *Telegraph Co.,* 135 Mich. 600. That is also the doctrine of the Supreme Court of the United States. *Primrose* v. *Telegraph Co.,* 154 U. S. 1. The effect of the decision of the trial court, then, is to declare that the State of Michigan has deprived defendant of its right to make a contract which otherwise it might make for transmitting a message from one State to another.

Does this construction make the statute unconstitutional as an interference with the right of Congress to regulate commerce between States? In answer to this question we need do nothing more than quote from decisions of the Supreme Court of the United States, and those decisions are authoritative. Said that court, speaking through Mr. Justice Bradley, in *Walling* v. *Michigan,* 116 U. S. 455:

" We have so often held that the power given to Congress to regulate commerce with foreign nations, among the several States and with the Indian tribes, is exclusive in all matters which require, or only admit of, general and uniform rules, and especially as regards any impediment or restriction upon such commerce, that we deem it

necessary merely to refer to our previous decisions on the subject, the most important of which are collected in *Brown* v. *Houston*, 114 U. S. 622, 631, and need not be cited here.   We have also repeatedly held that so long as Congress does not pass any law to regulate commerce among the several States, it thereby indicates its will that such commerce shall be free and untrammelled; and that any regulation of the subject by the States, except in matters of local concern only, is repugnant to such freedom.   *Welton* v. *Missouri*, 91 U. S. 275, 282; *County of Mobile* v. *Kimball*, 102 U. S. 691, 697; *Brown* v. *Houston*, 114 U. S. 622, 631."

In accordance with these principles was decided the case of *Wabash, etc., R. Co.* v. *Illinois*, 118 U. S. 557. To show what was there decided, I quote the headnotes of that opinion, the correctness of which I have verified:

"A statute of Illinois enacts that, if any railroad company shall, within that State, charge or receive for transporting passengers or freight of the same class, the same or a greater sum for any distance than it does for a longer distance, it shall be liable to a penalty for unjust discrimination.   The defendant in this case made such discrimination in regard to goods transported over the same road or roads from Peoria, in Illinois, and from Gilman, in Illinois, to New York; charging more for the same class of goods carried from Gilman than from Peoria, the former being eighty-six miles nearer to New York than the latter, this difference being in the length of the line within the State of Illinois.   *Held:*

"(1) This court follows the supreme court of Illinois in holding that the statute of Illinois must be construed to include a transportation of goods under one contract and by one voyage from the interior of the State of Illinois to New York.

"(2) This court holds, further, that such a transportation is ' commerce among the States,' even as to that part of the voyage which lies within the State of Illinois, while it is not denied that there may be a transportation of goods which is begun and ended within its limits, and disconnected with any carriage outside of the State, which is *not* commerce among the States.

"(3) The latter is subject to regulation by the State, and the statute of Illinois is valid as applied to it.   But

151 MICH.—28.

the former is national in its character, and its regulation is confided to Congress exclusively, by that clause of the Constitution which empowers it to regulate commerce among the States.  *  *  *

"(6) It follows that the statute of Illinois, as construed by the Supreme Court of the State, and as applied to the transaction under consideration, is forbidden by the Constitution of the United States, and the judgment of that court is reversed."

The subject of commerce in the foregoing cases was goods and not telegraph messages. But this is a distinction of no consequence, for in the case of *Telegraph Co.* v. *Texas*, 105 U. S. 460, it was held "that a telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods," and that "both companies are instruments of commerce, and their business is commerce itself."

*Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347, is an interesting case. In that case the telegraph company had undertaken to transmit a message from Shelbyville, Indiana, to Ottumwa, Iowa. It did not deliver this message at Ottumwa as required by a statute of the State of Indiana. Suit was brought in Indiana and the supreme court of that State held the statute applicable and the telegraph company liable for the penalty therein imposed. The Supreme Court of the United States held this statute unconstitutional. The opinion was delivered by Mr. Justice Field. After referring to the case of *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1, and *Telegraph Co.* v. *Texas*, 105 U. S. 460, he said:

"In these cases the supreme authority of Congress over the subject of commerce by the telegraph with foreign countries or among the States is affirmed, whenever that body chooses to exert its power; and it is also held that the States can impose no impediments to the freedom of that commerce. In conformity with these views the attempted regulation by Indiana of the mode in which messages sent by telegraphic companies doing business within her limits shall be delivered in other States cannot be upheld. It is an impediment to the freedom of that form of

interstate commerce, which is as much beyond the power of Indiana to interpose, as the imposition of a tax by the State of Texas upon every message transmitted by a telegraph company within her limits to other States was beyond her power.   Whatever authority the State may possess over the transmission and delivery of messages by telegraph companies within her limits, it does not extend to the delivery of messages in other States.

"The object of vesting the power to regulate commerce in Congress was to secure, with reference to its subjects, uniform regulations, where such uniformity is practicable, against conflicting State legislation.   Such conflicting legislation would inevitably follow with reference to telegraphic communications between citizens of different States, if each State was vested with power to control them beyond its own limits."

It is scarcely necessary to state the conclusion to be drawn from these authorities and these quotations.   The right which a telegraph company has to make contracts for the transmission of interstate messages cannot be taken from it by a State.   If it is, commerce is not "free and untrammelled" as according to the will of Congress it should be.

It is said that the statute deprives defendant of no right because it has no right to be negligent.   This argument is plausible but is altogether specious and inapplicable.   Defendant did have the right to enter into a contract limiting its liability in the event of negligence; that was a valuable right, and of that right the statute deprives it.

It is said that the contract was made in Michigan, and that its validity is to be determined by the laws of Michigan.   This is true.   But by what laws ?   Manifestly, by the constitutional laws of Michigan, and not by the unconstitutional laws.   The principle invoked is, then, of no service.   It does not aid in determining the question at issue.   Does the Constitution of the United States prevent the Michigan law applying to this case?   That is the question, and that question has been determined by the decisions of the Supreme Court of the United States, and those decisions are controlling.

Our attention is called to various decisions which plaintiff insists are opposed to these views. Some of them are decisions by State courts. We do not discuss them, further than to say that if they hold the doctrine contended for by plaintiff they are opposed to the decisions of the Supreme Court of the, United States, and we must disregard them.

We do, however, think it proper to review two of the decisions of the Supreme Court of the United States upon which plaintiff places great reliance. These cases are *Western Union Tel. Co.* v. *James*, 162 U. S. 650, and *Pennsylvania R. Co.* v. *Hughes*, 191 U. S. 477. In *Western Union Tel. Co.* v. *James* the court gave effect to the statute of the State of Georgia which provided a penalty for the failure of the telegraph company to make prompt delivery within the State of Georgia of a telegram coming from another State. The distinction between that case and the case at bar is this, as shown by the following quotation from the opinion of the court:

" A provision for the delivery of telegraphic messages arriving at a station within the State   *   *   *   would have no such effect upon the conduct of the telegraph company with regard to the performance of its duties outside the State.   *   *   *.   No attempt is here made to enforce the provision of the State statute beyond the limits of the State, and no other State could by legislative enactment affect in any degree the duty of the company in relation to the delivery of messages within the limits of the State of Georgia.   *   *   *   But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States."

The case of *Pennsylvania R. Co.* v. *Hughes*, supra, is also easily distinguishable. There suit was brought in the courts of Pennsylvania for the recovery of damages to a horse shipped from a point in the State of New York to a point in the State of Pennsylvania. The horse was damaged in the State of Pennsylvania. The shipment was made under a bill of lading which limited the car-

rier's liability. This limitation was valid according to the common law as construed by the courts of New York. It was invalid by the common law as construed by the courts of Pennsylvania. The supreme court of Pennsylvania adhered to its own construction of the law and held that within that State the limitation was invalid. In the Supreme Court of the United States the carrier contended that this decision was erroneous upon two grounds: *First*, because the validity of the contract was to be determined by the laws of the State of New York, where it was made, and not by the laws of Pennsylvania. This question the Supreme Court of the United States refused to determine because it was not a Federal question. *Second*, it was contended that the judgment of the Supreme Court of Pennsylvania was erroneous because it was in conflict with the interstate commerce act passed by Congress. The court held that there was in this act no "regulation of the matter in controversy," and that therefore the question was ruled against the carrier by the case of *Chicago, etc., R. Co.* v. *Solan*, 169 U. S. 133, and the reasoning in that case was quoted and said to be "virtually decisive." This disposition of the case requires us, then, to examine *Chicago, etc., R. Co.* v. *Solan*, and its reasoning.

There suit was brought in the courts of Iowa by a drover to recover damages for injuries sustained in that State in consequence of the negligence of a railroad company while transporting him and the cattle in his charge from Rock Valley, Iowa, to Chicago, Illinois. The shipper had signed a contract limiting the liability of the carrier for any injury to the person in charge of said stock to the amount of $500. The supreme court of Iowa held this contract void because it was prohibited by an Iowa statute. The Supreme Court of the United States affirmed this judgment, saying:

"A carrier exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable, according to the law of the State,

for acts of nonfeasance, or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. * * * The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits. * * * The statute now in question, so far as it concerns liability for injuries happening within the State of Iowa—which is the only matter presented for decision in this case—clearly comes within the same principles."

The distinction between the *Hughes* and *Solan Cases* on the one hand, and the case at bar on the other, is clear. In the *Hughes* and *Solan Cases* the State statute was given a local application—an application within the territorial limits of the State enacting the statute. In the case at bar it is sought to give the statute of Michigan extraterritorial application. It is sought by that statute to restrict defendant's right to carry messages between points in different States and to make it liable for an act done in another State. There is certainly nothing in the reasoning used in deciding the *Hughes* and *Solan Cases* to indicate that a State has authority to enact a statute which shall affect interstate commerce in another State. Indeed, that reasoning clearly points to the opposite conclusion. If it is true that in the absence of congressional legislation each State may regulate interstate commerce within its own borders, it follows that that commerce cannot be regulated by another State, and this is precisely

what was decided in *Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347, heretofore referred to.   It is interesting to compare that case and the case of *Western Union Tel. Co.* v. *James*, 162 U. S. 650, also heretofore referred to.   In the *Pendleton Case* the right of the State of Indiana to enact a statute regulating the delivery of telegrams in the State of Iowa was denied.   In the *James Case* the right of the State of Georgia to enact a statute regulating the delivery of telegrams within the State of Georgia was affirmed.   It may then be said that the Supreme Court of the United States has decided that in the absence of congressional legislation, each State may— within certain limits, at least—regulate interstate commerce within its borders, and that no State may regulate such commerce within the borders of another State, and the *Hughes Case* and the *Solan Case* are in harmony with this statement.   The authority of the State of Michigan to enact the statute under consideration is not affirmed by the decision in the *Hughes Case* or in the *Solan Case*, or by any other decision of the United States Supreme Court, but it is denied by the decisions cited earlier in this opinion.

The Constitution of the United States, then, prevents the statute having any application in this case.   It follows that if the legislature intended that it should apply to such a case, the United States Constitution forbids effect being given to such intention.   There is, however, nothing to indicate such an intent.   Nor is such intent to be presumed.   It is rather to be presumed that the legislature intended to enact a law which would be wholly constitutional.   The law should be construed in accordance with this presumed intent ( Cooley on Constitutional Limitations [7th Ed.], p. 255), and as thus construed it applies to contracts to transmit messages between points within this State.

In the opinion of Justice OSTRANDER it is said :

" If this court should be of opinion that the rule of the

*Carew Case* should be denied and that sound public pol-
icy, in view of changed conditions, prohibited the defend-
ant from limiting its liability for its negligence, by con-
tract, condition, rule, or stipulation, the application of the
announced rule to the present case would have required
a denial of defendant's contention. No different question
is presented when the decision of the State court is reached
by applying a statute of the State."

To this I cannot agree. In determining that the com-
mon-law rule announced in the *Carew Case* shall be
denied, and in determining that the statute applies to this
case, the court is called upon to consider two radically
different questions. In determining that the common-law
rule announced in the *Carew Case* should be denied, the
court is called upon to consider and answer in the affirma-
tive this question: Does the common law prohibit the
contract under consideration? In determining that the
statute applies to this case, the court is called upon to con-
sider and answer in the affirmative this question: Can a
statute of a State deny to one engaged in interstate com-
merce the right which he theretofore possessed of making
a contract limiting his liability? It is true that we may
avoid considering the second question by answering the
first in the manner suggested, viz., by overruling the
*Carew Case*, and it is also true that if we adopt that
course our decision would be final. For it could not be
reviewed by the Supreme Court of the United States
under the existing law. *Delmas* v. *Insurance Co.*, 14
Wall. (U. S.) 661; *Pennsylvania R. Co.* v. *Hughes*,
supra. I do not understand, however, that any member
of this court is willing to pursue that course. The doc-
trine of the *Carew Case* has for many years been re-
garded by the profession as a correct statement of the
common law; it has been twice approved by subsequent
decisions of this court, and the circumstance that since its
announcement it has received the approval of the Supreme
Court of the United States adds much to its weight. It
is true the legislature has seen fit in its wisdom to change
this law. There is an implied suggestion in the reason-

ing of my Brother OSTRANDER that sound public policy growing out of "changed conditions" requires a denial of the rule as laid down in the *Carew Case*. I am aware of no other changed condition than the enactment of the statute—a statute enacted, it must be presumed, with the legislative purpose of changing the common law. Surely such a statute affords no reason for our declaring that the statute had any effect upon the principles of the common law. We are bound to say that those principles were not affected by the statute. We are bound to determine this case, then, upon the assumption that, according to the principles of the common law, the defendant had a right to make the contract in question, and upon this assumption we must determine the question heretofore alluded to as the second question, viz. : Can the statute of a State deny to one engaged in interstate commerce the right, which under the principles of the common law he possessed, of making a contract limiting his liability ? We cannot determine this question in the affirmative by saying "we deny the right of one engaged in interstate commerce to make such a contract," for we do not deny that right; on the contrary, we affirm it. We must answer this question by a process of reasoning very different from that used in answering the first question, and we cannot answer it in the affirmative, as I have endeavored to show, without giving to the statute a construction repugnant to the Constitution of the United States. And that decision—and I state this not with the thought that it strengthens this opinion, but with the thought of illustrating the difference between these two questions—may be reviewed by the Supreme Court of the United States. See *Delmas* v. *Insurance Co.*, supra.

We hold, therefore, not that the statute under consideration is unconstitutional, but that, as properly construed, it has no application to this case.

From this reasoning it results that the judgment under review is erroneous and should be reversed and a judgment entered in plaintiff's favor for the small amount

paid for transmitting the message, and defendant should be awarded costs of both courts. That course cannot, however, be taken. Four of the eight justices constituting this court reject the views stated in this opinion, and for reasons stated in the opinion of Justice OSTRANDER decide that plaintiff is entitled to recover its full damages. As their views agree with the judgment of the trial court, they are controlling, and consequently that judgment must be affirmed.

GRANT, C. J., and MONTGOMERY and HOOKER, JJ., concurred with CARPENTER, J.