UNITED STATES EXPRESS COMPANY *v.* COHN.

Opinion delivered April 21, 1913.

1. CARRIERS—NEGLIGENCE—EXEMPTION FROM LIABILITY.—While an express company can not exempt itself from liability because of its negligence, it may, by a fair, open and reasonable agreement, limit the amount recoverable by a shipper, in case of loss or damage, to an agreed value made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk, and such limitation of liability is not in violation of the Carmack amendment to the act of 1906; 34 Stat. at Large, 584; *Adams*

*Express Co.* v. *Croninger,* 226 U. S. 491; *Kansas City So. Ry. Co.*
v. *Mixon-McClintock Co.,* 107 Ark. 48. (Page 120.)

2. CARRIERS—COSTS—JUDGMENT FOR.—When an express company ten-
ders to plaintiff the amount of damages due plaintiff for loss of
property shipped, the express company will be liable to plaintiff
for the amount due and interest thereon until the tender was
made, and all costs accruing subsequent thereto will be assessed
against the plaintiff. (Page 124.)

Appeal from Pulaski Circuit Court, Second Di-
vision; *Guy Fulk,* Judge; reversed.

*Thos. S. Buzbee,* for appellant.

The shipment involved in this case was an interstate
shipment, moving under the provisions of the act of
Congress. The validity of the provisions in the receipt
or bill of lading declaring the value of the shipment to
be not exceeding $50 and limiting the liability of the
express company to that amount, "unless a greater value
is declared at the time of shipment," is settled by the de-
cisions of the United States Supreme Court. 226 U. S.
491; *Id.* 513. ' Former opinions of this court in conflict
with the act of Congress and the above decisions must
give way.

*J. W. Blackwood* and *John W. Newman,* for appellee.

The evidence fails to show any special contract of
shipment or any declaration by the shipper that the goods
were worth only fifty dollars. It fails to show that ap-
pellee, the consignee and owner, was bound in any way.

The Croninger case, 226 U. S. 491, and similar cases,
merely apply the doctrine of estoppel to facts showing an
intentionally false statement by the shipper, and a *bona
fide* reliance thereon, and giving of low rates by the car-
rier; but in this case, *the shipper, or consignor, is not the
plaintiff, or a party to the action.*

Appellee bought the goods and ordered them deliv-
ered to the express company. She became the owner

upon delivery and liable for the transportation charges. It will not do to say because a servant of the shipper has orders to deliver goods to an express company for another person, that he has authority to assess or misstate the value and estop the owner from asserting the true value. 95 N. E. 1089; 112 Mass. 524, 529; 36 L. R. A. (N. S.) 68; 13 Barb. 57. See also Barnes on Interstate Trans., § 393; 158 U. S. 98; 202 U. S. 242.

SMITH, J. Appellee, who was the plaintiff below, was engaged in the retail millinery business in the city of Little Rock, Ark., and purchased certain merchandise in the city of Chicago, Ill., which was received by appellant as a common carrier on October 30, 1911, for shipment and delivery to appellee in Little Rock, Ark. The goods cost and were of the value of $251.50 and were destroyed while in transit at a point near Hulbert, Ark., by train robbers on the 1st day of November, 1911, and none of the goods were ever delivered to appellee.

The defendant answered and admitted the loss of the goods, but alleged that its contract of carriage, which was evidenced by the receipt executed by it at the time of the delivery to it of the goods, contained the following provisions:

"Nor in any case shall this company be held liable or responsible, nor shall any demand be made upon them beyond the sum of fifty dollars on a shipment of 100 pounds or less, and not exceeding fifty cents per pound on a shipment weighing more than 100 pounds, and said property is hereby valued at and the liability of the express company is limited to the value above stated, unless a greater value is declared at the time of shipment."

And it also further provided:

"The company's charge is based on a value of not exceeding $50 on a shipment of 100 pounds or less, and not exceeding fifty cents per pound on a shipment weighing more than 100 pounds, and the liability of the express company is limited to the value above stated, unless a greater value is declared and paid for or agreed to be paid for at the time of shipment."

And in addition, the answer contained the following allegations:

"Defendant states that at the time of shipment the owner did not declare a greater value than $50 per 100 pounds, but declared that said shipment did not exceed in value $50 per 100 pounds, and the shipper did not pay or agree to pay the charges on a greater value."

It alleged that said shipment did not weigh exceeding 100 pounds, and that by the terms of said receipt, it is not liable to the plaintiff for any amount greater than $50.

It further alleged that its charges for transporting property are based on the value of the property to be transported. That these charges are shown by its tariff on file with the Interstate Commerce Commission; and that the rate of charge paid by the said Gage Brothers & Company on the shipment herein referred to was based on the rate for shipments not exceeding in value $50 per 100 pounds, and that this defendant can not lawfully pay any greater value for said shipment."

The appellant on the 4th day of January, 1912, tendered to the plaintiff in full settlement of the claim sued on, the sum of $50 with interest at 6 per cent per annum from October 30, 1911, which tender was refused by appellee.

The material questions of fact were covered by an agreed statement of facts, which contained the following recitals:

"The plaintiff is engaged in the retail millinery business in Little Rock, Arkansas. The defendant is an association engaged in business as a common carrier by express between Chicago, Illinois, and Little Rock, Arkansas.

"Prior to October 30, 1911, the plaintiff ordered a number of hats from Gage Brothers & Company to be shipped to her by express from Chicago, Illinois. The plaintiff was to become the owner of said hats on delivery to the express company and was to pay all express charges and assume all risks incident to the transporta-

tion as far as Gage Brothers & Company might be concerned. On said date the defendant received from Gage Brothers & Company two paper boxes and one paper case containing said hats which were of the value of $251.50, and the weight of seventy pounds, and properly addressed to the plaintiff. At the time the defendant received said hats for transportation, nothing was said about their value. It is true that the defendant had in force and effect a schedule of charges based upon the value of goods shipped. The defendant said nothing to the shipper concerning said schedule or the value of the goods and said shipper did not inform defendant as to the value thereof. The defendant gave the shipper a receipt for said shipment as appears in the .deposition of George C. Woelfel, which deposition is taken as true throughout. The said shipment of hats was not delivered to the plaintiff nor was any part of said shipment delivered to her, although she has often demanded same from the defendant.''

Appellee contends that while her vendor, which was' the consignor, was instructed to deliver the goods to the express company, it was not authorized to make any contract with the express company other than that implied under the common law from the mere delivery for carriage and that the consignor had not signed the receipt containing the stipulations limiting liability above quoted, and had not knowingly assented to any limitation of liability whatever.

The cause was by consent of the parties submitted to the court sitting as a jury and there was a finding for appellee for the full value of the shipment and judgment accordingly, and this appeal is prosecuted from that judgment.

The judgment of the court below was fully warranted by the previous decisions of this court. *St. Louis, I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *Southern Exp. Co.* v. *Meyer,* 94 Ark. 103; *St. Louis, I. M. & S. Ry. Co.* v. *Dunn,* 94 Ark. 407; *Kansas City So. Ry. Co.* v. *Carl,* 91 Ark. 97; *St. Louis S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154.

But since the decision of the above cited cases, several cases involving the questions here considered have been decided by the Supreme Court of the United States which overrule our cases on the subject.

In the case of *Adams Express Co.* v. *E. H. Croninger,* 226 U. S. 491, decided January 6, 1913, judgment was asked for the full market value of a small package containing a diamond ring which was delivered to the express company in Cincinnati, Ohio, for shipment to Augusta, Georgia. The package was never delivered and judgment was prayed for the full market value.

The express company made defense by answer, the substance of which was as follows:

"That the defendant was an express company engaged in interstate commerce within the provisions of the act of Congress of June 29, 1906 (34 Stat. at L. 584, chapter 3591, U. S. Comp. Stat. Supp. 1911, page 1288), that in obedience to that act it had duly filed with the Interstate Commerce Commission schedules showing its rate and charges from Cincinnati to Augusta, Georgia, which schedules showed that its rates and charges, when the value of the property to be carried was in excess of $50, were graduated reasonably, according to the value, and that the lawful rate upon the package of the plaintiff from Cincinnati to Augusta was twenty-five cents if the value was $50 or less, and was fifty-five cents if its value was $125.

"It was averred that the plaintiff knew that the charges upon the package shipped were based upon the value of the shipment, and that it (the defendant) required that the value should be declared by the shipper, and that if he did not disclose and declare the value when he delivered the shipment to it at Cincinnati for transportation to Augusta, the rate charged would be based upon a valuation of $50. It was alleged that the package so delivered was sealed, and that defendant did not know the contents or value, and that if it had, it would not have received it for carriage for less than the lawful published

rate of fifty-five cents. The receipt or bill of lading issued shows no value, but contains a stipulation in these words:

" 'In consideration of the rate charged for carrying said property, which is regulated by the value thereof, and is based upon a valuation of not exceeding $50 unless a greater value is declared, the shipper agrees that the value of said property is not more than $50,. unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated nor for more than $50 if no value is stated herein.' "

A demurrer to this answer was filed and sustained and the express company declining to plead further, judgment was rendered against it for the full market value of the package.

It will be observed that the provision limiting liability to $50 was substantially the same in that case as in this, and Mr. Justice Lurton, who delivered the opinion of the court, said:

"The original interstate commerce act of February 4, 1887, was extensively amended by the act of June 29, 1906 (34 Stat. at L. 584, chapter 3591, U. S. Comp. Stat. Supp. 1911, page 1288). We may pass by many of the changes and amendments made by the latter act as not decisive, and come at once to the far more important amendment made in the twentieth section—an amendment bearing directly upon the carrier's liability or obligation under the interstate contracts of shipment, and generally referred to as the Carmack amendment," which amendment is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, re-

ceipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; *provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof.''

"Prior to that amendment, the rule of carrier's liability, for an interstate shipment of property, as enforced in both Federal and State courts, was either that of the general common law, as declared by this court and enforced in the Federal courts through the United States (*Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, 12 L. Ed. 717, 5 Sup. Ct. Rep. 151), or that determined by the supposed public policy of a particular State (*Pennsylvania R. Co.* v. *Hughes,* 191 U. S. 477, 48 L. Ed. 268, 24 Sup. Ct. Rep. 132), or that prescribed by statute law of a particular State (*Chicago, M. & St. P. R. Co.* v. *Solan,* 169 U. S. 133, 42 L. Ed. 688, 18 Sup. Ct. Rep. 289).

"Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject.''

"That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulations or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all State regulation with reference to it. Only the silence of Congress

authorized the exercise of the police power of the State upon the subject of such contract. But when Congress acted in such a way to manifest a purpose to execute or concede authority, the regulating power of the State ceased to exist.''

And he concludes a discussion of the question of the right of the carrier to limit its liability in consideration of a reduced rate by holding that it can be done, that while a carrier can not exempt himself from liability from his own negligence or that of his servants, he may, by a fair, open, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of the two or more rates of charges, proportioned to the amount of the risk. The court concluded that the provisions of the contract, limiting liability was not in violation of the provisions of the Carmack amendment, quoted, and reversed the judgment of the State court and remanded the cause with directions to overrule the demurrer.

To the same effect are the case of *Chicago, St. Paul, M. & Omaha Ry. Co.* v. *Latta,* 226 U. S. 519; *Chicago, B. & Q. R. Co.* v. *Miller,* 226 U. S. 513; *Wells Fargo & Co.* v. *Neiman-Marcus Co.,* 227 U. S. 469; *Kansas City So. Ry. Co.* v. *Carl,* 227 U. S. 639.

In the case of *Wells Fargo & Co.* v. *Neiman-Marcus Co., supra,* involving the construction of the same receipt which contained the clause limiting liability, Mr. Justice Lurton, for the court, said:

''But the shipper, in accepting the receipt reciting that the company ''is not to be held liable beyond the sum of $50, at not exceeding which sum said property is hereby valued, unless a different value is hereinabove stated,'' did declare and represent that the value did not exceed that sum, and did obtain a rate which he is to be assumed to have known was based upon that as the actual value. There is no substantial distinction between value stated upon inquiry, and one agreed upon or declared voluntarily. The rate of freight was based upon the val-

uation thus fixed, and the liability should not exceed the amount so made the rate basis. *Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, 338, 28 L. Ed. 717, 720, 5 Sup. Ct. Rep. 151.

Under the authority of these cases, the appellant was liable for only the amount of its tender, $50, and interest from the date of the loss of goods to the date of the tender, and judgment against it will be rendered here for that amount, and all costs of this cause subsequent to the date of the tender will be assessed against appellee. *Mixon-McClintock Co.* v. *Kansas City So. Ry. Co.,* 107 Ark. 48.