LEONARD W. ELY, Respondent, *v.* WILLIAM M. BARRETT, as President of ADAMS EXPRESS COMPANY, a Joint Stock Association, Appellant.

Second Department, December 29, 1917.

Common carrier — agreement to transport dog through other carrier — interstate commerce — deviation from agreed route by carrier — burden of showing freedom of negligence cast upon carrier — proof justifying recovery.

Where an express company specifically agreed to transport the plaintiff's dog to a city in a foreign State by another specified express company, but, in contravention of the agreement, did not deliver the animal to the specified carrier and carried it over its own line by a different route

and the dog died in transit, the burden of showing negligence of the defendant as required by the interstate bill of lading is not upon the shipper, but, on the contrary, as the carrier willfully deviated from the stipulated route, it became an insurer to the extent of proving that the death of the animal was not due to its own act or negligence.

The Carmack amendment to the Interstate Commerce Act does not disturb such common-law liability.

*It seems,* that under the law of this State a carrier, in the absence of a limiting contract, is liable as in the case of inanimate property for the transportation of live animals, except as to injuries arising from their nature and propensities and which diligent care cannot prevent.

Evidence examined, and *held,* sufficient to justify a finding that the defendant was negligent and that the plaintiff was entitled to recover.

APPEAL by the defendant, William M. Barrett, as president, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 14th day of June, 1917, upon the decision of the court after a trial before the court, a jury having been waived.

*Edward V. Conwell,* for the appellant.

*Alison M. Lederer,* for the respondent.

THOMAS, J.:

The plaintiff recovered a judgment for a dog, which defendant undertook to carry from East Williston, Nassau county, N. Y., to Palo Alto, Cal., by Wells Fargo & Company's Express from New York city. The defendant, in contravention of its contract, did not deliver the animal to the Wells Fargo Company, but sent it over its own line to Pittsburg, Penn., beyond which point, at Wooster, O., the dog was found dead in the car. The parties executed the livestock contract and the defendant issued the uniform express receipt, according to the forms duly filed by defendant with the Interstate Commerce Commission. The plaintiff's contention is that by reason of the deviation from the stipulated route the defendant is liable for the loss as insurer; while the defendant's theory is that the carrier at common law does not insure against the consequences of the vitality of live freight, but is liable only for the results of its own negligence; that the parties have so stipulated in the form filed with the Inter-

state Commerce Commission, and that to allow a departure from such agreement would be a discrimination condemned by the Interstate Commerce Act. It is unnecessary to consider the Interstate Commerce Act farther than to note that under it the liability cannot be enlarged by the form of the action. (*Georgia, Florida & Alabama Ry.* v. *Blish Co.*, 241 U. S. 190.) In the contract the shipper releases the carrier " from all liability for delay, injuries to or loss of said animals * * * from any cause whatever, unless such delay, injury or loss shall be caused by the Express Company or by the negligence of its agent and employees. * * * The shipper agrees that as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the Shipper to have been caused by negligence of the carrier." The stipulation means that in the course of the specific service undertaken the carrier shall be liable for the loss caused by its negligence proven by the shipper. That put the burden of proof upon the shipper. But the carrier in fact departed materially from the agreement, and assumed to carry the dog by another route, for an increased distance under its immediate care and control, in a different territory, perchance under different climatic conditions, for delivery to a different connecting carrier, and in the course of such carriage the animal died. Do such facts relieve the shipper from further evidence that the death was caused by some act of defendant done or omitted, and impose upon the carrier the burden of showing not only due care, but also that the changed route did not enhance the risk of loss? I am at the moment dealing merely with the effect of the deviation on the burden of proof of negligence. It was something more than negligence to divert the carriage from the Wells Fargo Express at New York. It was a willful act. The Wells Fargo Company was the appointed bailee; the defendant became from New York a bailee by its own wrong. It may be said that no causal connection between the deviated route and the death of the dog can be proven. But the essential of the inquiry is whether the shipper must follow his dog into such regions as the carrier may negligently or willfully have placed it, and trace what befell the animal in the vicissitudes of the errant transporta-

tion. That is a burden the shipper did not undertake, and in the nature of the case it could not have been contemplated. It is not the spirit of the Interstate Commerce Act, affected by the Hepburn and Carmack amendments, that it is discrimination to require a carrier, who abandons an agreed service and assumes an authorized carriage, wherein the property was destroyed, to show that neither the aberration nor its conduct caused the loss. Reason and the necessity of the case require such conclusion. That judgment does not ignore the terms of the contract, (1) because it is equivalent to holding that the facts fulfill the burden that imposes the proof on the shipper; (2) because the carrier, by breaking up the concerted route, put the shipper at a risk he did not assume, subjected him to conditions not contemplated, and placed him at a disadvantage that embarrasses or precludes proof of the carrier's acts and omissions. The stipulated facts show the following report by the express messenger: " This dog was lying down in crate when received at Pittsburgh. Would not get up when loaded in the car and appeared to be sick. I placed her near the door to get air and gave her feed and water, but she would neither eat nor drink and would not get up when I spoke to her. As she did not appear to be suffering I thought she was all right. I looked in crate again after leaving Pittsburgh. She was still lying down. After leaving Wooster, O., I examined her again and found she was dead." What delay or exposure attended the diversion, where or under what conditions the sickness appeared, what was overlooked, if not beyond plaintiff's ascertainment, although presumptively within the knowledge of the erring carrier, were at least things that the shipper did not agree to prove. Moreover, when the dog was " loaded in the car " at Pittsburg, she was sick, and yet without rest she was sent forward. I think that the court was quite justified in finding that the defendant was negligent. In *Cragin* v. *N. Y. C. R. R. Co.* (51 N. Y. 61) it was said that the carrier " does not absolutely warrant live freight against the consequences of its own vitality. Animals may injure or destroy themselves or each other; they may die from fright or from starvation because they refuse to eat, or they may die from heat or cold. In all such cases the carrier is relieved from

responsibility if he can show that he has provided all suitable means of transportation, and exercised that degree of care which the nature of the property requires. Therefore, in this case it was not sufficient to establish the common-law liability of the defendant to show that the hogs died from heat; but it was incumbent on the plaintiff to show further, that there was some negligence or omission of duty on the part of the defendant," and it was decided that the carrier could, by express contract, exempt itself from liability for its own negligence. But had the *Cragin* case shown that the hogs were diverted by the carrier from the stipulated route and died in an unauthorized locality, taken sick under unknown conditions, with no explanation or proof of care, there is no reason to believe that more evidence would have been exacted. The decision in this State is that the carrier, in the absence of a limiting contract, is liable as in the case of inanimate property for the transportation of live animals, except as to injuries arising from their nature and propensities, and which diligent care cannot prevent. (*Clarke* v. *Rochester & Syracuse Railroad Company*, 14 N. Y. 570; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 id. 180.) In the present case the carrier limited its liability to proved negligence, which, as regards the vitality of the animal, is the law. But the usual rule is that when a carrier deviates from the stipulated route he becomes an insurer, and responsible for all loss and damage to the goods, even unavoidable casualty. (*Maghee* v. *Camden & Amboy R. R. Co.*, 45 N. Y. 514.) In the case last cited it was said: " If it could be shown, in such a case, that the loss must certainly have occurred from the same cause, if there had been no default, misconduct or deviation, the carrier would be excused; but the burden of proof of this fact would be upon the carrier." If a carrier takes upon itself the transportation of animals by whatever way it will and against the agreement with the owner, if it does not become an insurer, it is not too much to hold that thereby the carrier takes the responsibility of exposing their vitality to the conditions of the route, so far forth, at least, as to explain that nothing concerning the diversion contributed to an animal's death. The Carmack amendment does not disturb such common-law liability. (*Cincinnati & Texas Pacific Ry.* v. *Rankin*, 241 U. S. 319,

326.\*) I cannot but think that the facts bring this case within the decision in *Galveston, H. & S. A. R. Co.* v. *Wallace* (223 U. S. 481, 492).

The judgment should be affirmed, with costs.

Present — JENKS, P. J., THOMAS, STAPLETON, RICH and BLACKMAR, JJ.

Judgment unanimously affirmed, with costs.

---

\* See 24 U. S. Stat. at Large, 386, § 20, as amd. by 34 id. 593, 595, § 7; 34 id. 838, Res. No. 47, and 38 id. 1196, 1197, chap. 176. Since amd. by 39 U. S. Stat. at Large, 441, 442, chap. 301.— [REP.