JOSEPH A. BENOIT *v.* CENTRAL VERMONT RAILWAY, INC.

(73 A2d 321)

January Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion filed May 2, 1950.

*Horace H. Powers* for the defendant.

*P. L. Shangraw* for the plaintiff.

BLACKMER, J.   The plaintiff brought his writ in tort against the defendant, a common carrier, seeking to recover for injury to a shipment of twenty horses caused by "shipping fever". He alleged (1) diversion by the carrier from the original route and place of destination contracted for; (2) unnecessary delay in delivery; and (3) that the horses having become sick en route, the defendant failed to render them any medical attention.   It was further alleged that the defendant was negligent in each of the three particulars specified, and that "as a result of all of the foregoing acts of negligence" the plaintiff was damaged.   The defendant's answer was the general denial.   Trial was by jury, resulting in a verdict and judgment for the plaintiff.   The cause is here on bills of exceptions filed by both parties.

The plaintiff's evidence fairly and reasonably showed the following facts.   The shipment was made by the plaintiff from Sigourney, Iowa, in February, 1947.   When loaded the horses were in apparent good health.   A uniform live stock contract issued. Therein the shipment was consigned to the plaintiff at Richford, Vermont, over the route, Chicago, Wabash, Detroit and Canadian Pacific Railroad to destination.   The contract contained this provision: "No carrier is bound to transport said live stock by any particular train or vessel or in time for any particular market, or otherwise than with reasonable dispatch.   Every carrier shall have the right in case of physical necessity to forward said live stock by any carrier or route between the point of shipment and the point of destination."   The shipper did not accompany the shipment.   It was diverted at Detroit not by the plaintiff and under circumstances not shown, and was delivered to the plaintiff by the defendant at Enosburg Falls, Vermont.   The horses were in transit

slightly over seven full days. The ordinary time for delivery from Sigourney over the route contracted for, Canadian Pacific Railway terminal carrier, is four or five days. Seven days is a normal transit interval from Sigourney to Enosburg Falls via Central Vermont Railway. Some of the horses were sick with shipping fever on arrival; two were very sick; six died from the illness from two to six days after arrival. Shipping fever is a highly communicable virus disease. The period of incubation is from five to ten days. When the symptoms develop, medical attention is advisable.

At the close of the plaintiff's case the defendant moved for a directed verdict. The grounds of the motion still relied on are: (1) That the plaintiff had failed to show any unreasonable delay and (2) that the plaintiff had failed to show that any delay was the proximate cause of the sickness. The motion was denied, whereupon the defendant rested without the introduction of evidence.

The plaintiff then moved for a directed verdict on several grounds, among them that there was a diversion of the shipment, entirely unaccounted for. The motion was denied.

██ First we address ourselves to the plaintiff's allegation of negligence. In an action of tort against a common carrier as such, the duties and obligations imposed on it by the common law follow as a matter of course. One is required to allege only what is necessary in making out a prima facie case. Prima facie the defendant by accepting merchandise for transportation incurs the responsibilities put upon it by the common law, or that law as modified by statute. While the term "negligence" is often used in connection with the acts of a common carrier defendant, the "prudent man" rule as commonly understood has no application. Even though negligence is alleged in an action against a carrier and fails of proof, there is no variance, and the plaintiff may recover, if the evidence shows a case under the general rules respecting the liability of carriers. *Saliba* v. *New York Central R. R. Co.,* 101 Vt 56, 58-59, 140 A 491.

Did, then, the plaintiff's evidence show a case under the general rules respecting the liability of carriers? It is clear that by "diversion" the plaintiff means what is more often denominated "deviation," and we so treat it.

██ A voluntary departure without necessity or reasonable

cause from the stipulated mode of carriage is a deviation. It is a deviation to ship goods to another point than that designated, to deliver goods to a connecting carrier other than the one designated by the shipper, or to depart from the route of transportation contracted for. The general rule is that a deviation from the contract of carriage with respect to the route of transportation renders the carrier liable as an insurer for any loss of or injury to the property. The carrier is not excused even if the loss or injury results from a cause from which it is ordinarily exempt, as, for instance, an act of God or the public enemy. And, too, a carrier is liable for an injury arising in case of a deviation regardless of the question of proximity of cause. There is an exception to this last rule which we approve: If it can be shown that the loss which actually happened must certainly have occurred from the same cause if there had been no deviation, the carrier will be excused, although the burden of proving that fact is, in such a case, upon the carrier. 9 Am Jur Carriers, §§ 471, 472, 474.

■ A deviation from the usual manner of performing the contract of carriage may be justified or even required under some circumstances, so as to exonerate the carrier from a resulting loss. In other words, there may be a justifiable deviation. 9 Am Jur Carriers, § 473. But the burden of proving an emergency or a physical necessity justifying deviation is on the carrier. 10 CJ Carriers, § 578; 13 CJS Carriers, § 354 (m) and 45 a, note 7.

■ Moreover, these rules apply to animals. It was said in *Michigan Central R. R. Co.* v. *Myrick,* 107 US 102, 1 S Ct 425, 27 L ed 325, 327, that when a railroad company undertakes generally to carry livestock, it assumes the same obligations, so far as the route is concerned over which the freight is to be carried, as when it undertakes the transportation of ordinary freight.

*Ely* v. *Barrett,* 181 App Div 176, 168 NYS 419, is squarely in point. There the carrier deviated from the stipulated route. The dog being transported became sick and died en route. It was held that the carrier became an insurer of the dog to the extent of proving that its sickness and death were not due to the carrier's own act or negligence. We are favorably impressed with the court's reasoning, and reproduce it herewith. The dog was carried into a different territory, perchance under different climatic conditions, for delivery to a different connecting carrier, and in the course of such carriage the dog became sick and died. It may be said that

no causal connection between the deviated route and the death of the dog can be proven. But the essential of the inquiry is whether the shipper must follow his dog into such regions as the carrier may negligently or wilfully have placed it, and trace what befell the animal in the vicissitudes of the errant transportation. That is a burden the shipper did not undertake. The carrier, by breaking up the concerted route, put the shipper at a risk which he did not assume, subjected him to conditions not contemplated, and placed him at a disadvantage that embarrasses or precludes proof of the carrier's acts or omissions. What delay or exposure attended the diversion, when or under what conditions the sickness appeared, what was overlooked, if not beyond the plaintiff's ascertainment, although presumptively within the knowledge of the erring carrier, were at least things which the shipper did not agree to prove. The usual rule is that when a carrier deviates he becomes an insurer, unless he can show that the loss would certainly have occurred from the same cause had there been no deviation, the burden of proving this fact being on the carrier. If a deviating carrier does not become an insurer of animals, it takes the responsibility of exposing their vitality to the conditions of the route, so far, at least, as to explain that nothing concerning the diversion contributed to the animal's death. The Carmack Amendment does not disturb this common law liability.

Our reports contain but one case touching on deviation. *Day* v. *Ridley,* 16 Vt 48, 49, 52, 42 Am Dec 489, held that where there was a shipwreck on Lake Champlain and the goods were landed out of course, the burden of proof was on the defendant carrier to show that there was no damage to the goods except that which was occasioned by an act of God. So far as it goes, *Day* v. *Ridley* is consistent with the rules adopted above.

Applying the law to the facts in hand, there was demonstrably a deviation and injury to the live stock. The plaintiff's evidence left it uncertain as to when, where, and under what circumstances the illness began and developed. The defendant made no effort to show that the deviation was justifiable. Nor did the defendant attempt to demonstrate that the loss would certainly have occurred from the same cause had there been no deviation, or that nothing concerning the deviation contributed to the illness of the horses. Under these circumstances, the defendant having failed to carry the burden which the law places on it, the plaintiff was entitled to

a directed verdict as to liability on the ground of deviation. By the same token, the defendant's motion for a directed verdict was correctly denied. The error in failing to grant the plaintiff's motion for a verdict was cured by the verdict in his favor.

The plaintiff excepted to the court's charge on damages in this language: "We also except to the court's failure to charge that if the plaintiff is entitled to a verdict the plaintiff should receive $1012.23." It is enough to say that the court was not told what the objection was. Therefore we give this exception no further attention. *Healy, Admr.* v. *Moore,* 108 Vt 324, 327, 187 A 679; *Goldberg* v. *Gintoff,* 112 Vt 43, 47, 20 A2d 114.

After verdict and before judgment the plaintiff moved to amend his declaration. The proposed amendment sought to add a new and larger measure of damage to the theory alleged in the complaint. The court had charged the theory originally alleged without valid exception, as seen above. The plaintiff admits in his brief, and the transcript shows, that the verdict as to damage is well supported by the evidence on the theory on which it was submitted by the court. The proposed amendment was rightly denied. An amendment cannot be made for the purpose of overthrowing a verdict. 49 CJ Pleading § 620. An amendment is allowed to cure error, not to create it. *White River Bank* v. *Downer,* 29 Vt 332, 339.

Likewise, after verdict and before judgment the plaintiff moved that the verdict be set aside as to damages only, and for judgment *non obstante veredicto* in a larger sum. The motion is predicated on the ground that the undisputed evidence shows that the plaintiff sustained damage in the sum of $1,560.25. This is a larger amount than the verdict. In approving the court's denial of the motion it is ample to repeat what we said just above: The plaintiff admits in his brief, and the transcript shows, that the verdict as to damage is well supported by the evidence on the theory alleged in the complaint and on which it was submitted by the court. *Collins* v. *Fogg,* 110 Vt 465, 469, 8 A2d 684.

*Judgment affirmed.*