**LICHTEN v. EASTERN AIRLINES, Inc.**
No. 166, Docket 21892.

United States Court of Appeals
Second Circuit.

Argued Feb. 14, 1951.

Decided May 22, 1951.

Frank, Circuit Judge, dissented.

940

Rein, Mound & Cotton, New York City, for plaintiff-appellant; John J. Tomich, New York City, of counsel.

Gambrell, Harlan & Barwick, Atlanta, Ga., for defendant-appellee; Harold L. Russell, New York City, Oscar M. Smith, Atlanta, Ga., of counsel.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant sued to recover the value of certain jewelry, and the District Court granted the defendant's motion for summary judgment. 87 F.Supp. 691. The pertinent facts, which have been stipulated for purposes of this appeal, are as follows. On January 18, 1947, the appellant, a citizen of Pennsylvania, traveled from Miami, Florida, to Philadelphia, Penna., as a passenger aboard one of the appellee's airplanes. Pursuant to the terms of her ticket, she delivered two pieces of baggage to the appellee for carriage on the trip. One of these bags was taken from the plane and delivered to her when she alighted in Philadelphia, but the other was mistakenly carried on a continuation of the flight to Newark, New Jersey. It was there delivered to some unknown person, without the surrender of the baggage check which the appellant had been given. Some time later the bag was returned to the appellee in Newark by an unknown person whose identity the appellee did not discover and later it was delivered by the appellee to the appellant. Upon its return to the appellant, there were missing from the bag three articles of jewelry of a total value of $3,187.95.

The appellee is a Delaware corporation and an air carrier subject to the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq. In compliance with section 403(a) of that Act, 49 U.S.C.A. § 483(a) it had filed with the Civil Aeronautics Board a tariff, which provided in part:

Rule 10,

Par. II "* * * Money, *jewelry*, silverware, samples, negotiable paper, securities and similar valuables or business documents will be carried only at the risk of the passenger."

Par. III(A) "* * * no participating carrier shall be liable for the loss of, or any damage to, or any delay in the delivery of, any property of the following types which is included in a passenger's baggage, whether with or without the knowledge of the carrier: fragile or perishable articles, money, *jewelry*, silverware, negotiable paper, securities, or other valuables, samples, or business documents; or any other loss or damage of whatever nature resulting from any such loss, damage, or delay." (Italics added.)

To the extent that these rules are valid, they became a part of the contract under which the appellant and her baggage were carried. Western Union Telegraph Co. v. Esteve Brothers & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094. Mack v. Eastern Air Lines, Inc., D.C.Mass., 87 F.Supp. 113. The question presented is thus one of the validity of these provisions.

By Sections 1002(a), (d), and (g) of the Civil Aeronautics Act, 49 U.S.C.A. § 642

(a), (d), and (g), the Civil Aeronautics Board (formerly Authority) is empowered, upon complaint of any person or upon its own initiative, and after notice and hearing, to decide whether any individual or joint rate, fare, or charge demanded or received, or any classification, rule, regulation, or practice affecting such rate, fare, or charge, is or will be unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, and if it so finds, to determine and prescribe the lawful rate, fare, or charge, or the lawful classification, rule, regulation, or practice; and it is further authorized to conduct a hearing upon any new tariff filed with it, and to suspend the operation of the tariff and defer the use of any rate, fare, charge, classification, rule, regulation, or practice pending such hearing, and to make such order with reference to the tariff as would be proper in a proceeding instituted after it had become effective.

Under these provisions, and similar provisions of other enactments, it is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency in the first instance, and that under this doctrine of "primary jurisdiction" the provisions of a tariff properly filed with the Board and within its authority are deemed valid until rejected by it. Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Civil Aeronautics Board v. Modern Air Transport, 2 Cir., 179 F.2d 622, 624.

If, then, the Civil Aeronautics Act is to be construed as investing the Board with power to approve and accept a tariff which, like this one, exempts the carrier from all liability for the loss of or damage to certain named classes of articles, the reasonableness of the rule could be raised here only after the exhaustion of administrative remedies, and the exculpatory provisions must now be enforced. The appellant, however, takes the position that the Act should not be interpreted to allow the Board to modify the common law rule that a common carrier may not by contract relieve itself from liability for the consequences of its own negligence. See New York Central Railroad Co. v. Lockwood, 17 Wall. 357, 21 L.Ed 627; The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016. It therefore follows, appellant argues, that the common law rule still obtains to invalidate the exculpatory provisions of the tariff regardless of any action of the Civil Aeronautics Board. We cannot agree.

A primary purpose of the Civil Aeronautics Act is to assure uniformity of rates and services to all persons using the facilities of air carriers. Civil Aeronautics Act §§ 404(a), 902(a), 49 U.S.C.A. §§ 484(a), 622(a). To achieve this, it is essential, in the judgment of Congress, that a single agency, rather than numerous courts under diverse laws, have primary responsibility for supervising rates and services. Cf. Southern Ry. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836. Accordingly, this broad regulatory scheme, and not the common law, must govern the contract of the parties. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; Mack v. Eastern Air Lines, Inc., supra.

In its purpose, as in its general statutory provisions, the Civil Aeronautics Act is similar to the Interstate Commerce Act. Cf. Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372. The latter, however, contains an express provision prohibiting exemption from liability for any loss or damage to baggage caused by the carrier, regardless of negligence, but permitting reasonable valuation agreements to limit that liability. Interstate Commerce Act § 20(11), 49 U.S.C.A. § 20(11). Hartzberg v. New York Cent. R. R., 181 Misc. 129, 41 N.Y.S.2d 345, affirmed 268 App.Div. 904, 51 N.Y.S.2d 741, affirmed 295 N.Y. 703, 65 N.E.2d 337, certiorari denied 328 U.S. 849, 66 S.Ct. 1121, 90 L.Ed. 1622. The absence of a similar provision in the Civil Aeronautics Act compels the conclusion that such an exemption is not forbidden to air carriers, and that the Board could properly accept the appellee's tariff.

The appellant argues, however, that even though the rule is valid it is made inapplicable by the over-carriage of the bag containing the jewelry. This deviation, she insists, constituted a breach of the contract so fundamental that it deprived the carrier of the benefit of the exculpatory provisions of the tariff. The argument rests on an analogy to admiralty cases of which The Sarnia, 2 Cir., 278 F. 459, is typical. It overlooks, however, the far-reaching effect of the principle of uniformity of treatment, which requires that the tariff be applied to all matters arising from the attempted performance of the contract. Misdelivery is not a conversion which deprives a carrier of the benefit of a tariff provision limiting liability. Missouri Pac. R. R. v. Boone, 270 U.S. 466, 46 S.Ct. 341, 70 L.Ed. 688; Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

1. *The exemption-from-all-liability provision.*

My colleagues, on two grounds, hold that the District Court decided correclty concerning the validity of the provision exempting defendant from all liability for its own negligence: (A) The Board approved that provision, and had statutory authority so to do. (B) Plaintiff may not obtain a court decision as to the validity of that provision without first initiating and concluding a complaint proceeding before the Board under 49 U.S.C.A. § 642. I shall discuss these two grounds in turn.

A. *The Board's authority to approve this provision.*

I agree that, since the tariff here involved was filed with the Board, the Board must be deemed to have approved this provision in the absence of any showing that it has rejected it. I also agree that this provision, exculpating the carrier from all liability (whether due to its negligence or otherwise) for loss of jewelry, became a part of the contract of carriage, binding upon the plaintiff, *if* the Board had power to approve it.

In concluding that the Board had such power, my colleagues argue thus: (a) There is nothing in the Civil Aeronautics Act similar to the Carmack Amendment of 1906 to the Interstate Commerce Act, which Amendment (with subsequent changes not here relevant) is now found in 49 U.S.C.A. § 20(11). (b) The only reason that the Interstate Commerce Commission cannot validate a tariff exempting a carrier from liability for its negligence is the language of the Carmack Amendment. (c) Therefore, the Civil Aeronautics Act authorizes the Civil Aeronautics Board to validate a tariff such as the one here in suit. I do not agree.

My colleagues rely on Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, which construes the Carmack Amendment. I think that case serves only to show the incurable invalidity of the exculpatory provision here. Before the enactment of the Carmack Amendment in 1906, such an exemption of the carrier from liability for its own negligence would have been invalid under the federal common law.[1] As the Supreme Court put it,

---

1. New York Central Railroad Co. v. Lockwood, 17 Wall. 357, 21 L.Ed. 627; Hart v. Pennsylvania R. Co., 112 U.S. 331, 338, 5 S.Ct. 151, 28 L.Ed. 717; Adams Express Co. v. Croninger, 226 U.S. 491, 509–511, 33 S.Ct. 148, 57 L.Ed. 314: Kansas Southern Ry. v. Carl, 227 U.S. 639, 649–650, 33 S.Ct. 391, 57 L.Ed. 683; Santa Fe Railway v. Grant Bros., 228 U. S. 177, 184, 33 S.Ct. 474, 57 L.Ed. 787; Boston & Maine R. Co., v. Piper, 246 U. S. 439, 444–445, 38 S.Ct. 354, 62 L.Ed. 820. The rule was forcefully reiterated after the Carmack Amendment in Santa Fe Railway v. Grant Bros., 228 U.S. 177

at 184–185, 33 S.Ct. at page 476, 57 L. Ed. 787. "It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation. [Citing cases] The rule rests on broad grounds of public policy, justifying the restriction of liberty of contract because of the public ends to be achieved. The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and dili-

in Hart v. Pennsylvania R. Co., 1884, 112 U.S. 331, 338, 5 S.Ct. 151, 154, 28 L.Ed. 717: "It is the law of this court that a common carrier may, by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants." Two reasons of public policy have been advanced for this doctrine: (1) To hold common carriers to a high degree of care, and (2) to prevent carriers from taking unfair advantage of the unequal bargaining position of their customers.[2]

However, as the Supreme Court pointed out in the Croninger case, 226 U.S. at page 500–503, 33 S.Ct. at page 151, 57 L.Ed. 314, after the enactment of the Interstate Commerce Act of 1887 but before the Carmack Amendment, where a case arose in a state court, because there was no federal legislation on the subject of exculpatory provisions, state law would be applied, even though it might "indirectly affect interstate commerce contracts of carriage". The Court then summarized the pre-Carmack state of affairs thus, 226 U.S. at page 504, 33 S.Ct. at page 151: "Prior to [the Carmack] amendment the rule of carrier's liability, for an interstate shipment of property, as enforced in both Federal and state courts, was either that of the general common law, as declared by this court and enforced in the Federal courts throughout the United States. Hart v. Pennsylvania Railroad, 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717; or that determined by the supposed public policy of a particular State, Pennsylvania Railroad Co. v. Hughes, 191 U.S. 477, 24 S.Ct. 132, 48 L.Ed. 268; or that prescribed by statute law of a particular State, Chicago, Soc., Railroad v. Solan, 169 U.S. 133, 18 S.Ct.

289, 42 L.Ed. 688. Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject."

The Carmack Amendment, at the time of its enactment in 1906, 34 Stat. 593, 595, read in part as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

As the Supreme Court in the Croninger case interpreted this language, 226 U.S. 511, 33 S.Ct. 148, 154, 57 L.Ed. 314: "The exemption forbidden is * * * 'a statutory declaration that a contract of exemption from liability for negligence is against public policy and void.' This is no more than this court, as well as other courts administering the same general common law, have many times declared."

Thus I think the Croninger case clearly shows that the purpose of that part of the Carmack Amendment which is relevant here was to nullify state legislation, or state decisional rules, and to substitute therefor the general Federal "common law" rule. Under that Federal "common

gence 'seeks to put off the *essential duties* of his employment.' It is recognized that the carrier and the individual customer are not on an equal footing. 'The latter * * * cannot afford to higgle or stand out and seek redress in the courts. * * He prefers rather to accept any bill of lading, or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this or abandon his business.' Rail-

road Company v. Lockwood, supra, [17 Wall. at] 378, 379, 21 L.Ed. 627, 639, 640. For these reasons, the common carrier, in the prosecution of its business as such is not permitted to drop its character and transmut itself by contract into a mere bailee, with right to stipulate against the consequences of its negligence."

2. Santa Fe Railway v. Grant Bros., supra, note 1.

law" rule, even before the Carmack Amendment, the Interstate Commerce Commission could not have legalized a tariff provision exempting a carrier from liability for its own negligence.

Since there is nothing in the Civil Aeronautics Act at all comparable to the Carmack Amendment, I think the Civil Aeronautics Board is without power to legalize such a provision here. For, applying the rationale of the Croninger case, were it not for Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the Federal common law rule would invalidate the exculpatory provision here, in the absence of a state statute on the subject, since this suit was brought in a Federal court. However, the Croninger doctrine, as modified by Erie v. Tompkins, supra, requires the Federal courts sitting in New York to apply the New York decisional rules, including the New York "choice of law" rules.[3] The highest court of New York has held that, as a matter of public policy, the New York courts will not recognize the law of any other state which would validate a provision making a carrier immune from liability for its own negligence.[4] This rule of New York public policy is binding upon a Federal court, sitting in New York, in a diversity case, Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481. It would follow, then, that the exculpatory provision here is without validity.

It is possible, however, that the Erie-Tompkins doctrine does not apply to cases involving tariffs filed with the Board under the Civil Aeronautics Act, on the theory that Congress, when it enacted that legislation,[5] may be deemed to have intended that uniform rules should govern interstate air carriage. If that is so, it is inconceivable that Congress intended, merely by remaining silent,[6] to authorize the Board to adopt a policy flatly at odds with the hitherto uniform Federal policy, frequently announced by the Supreme Court in decisions involving all sorts of transportation,[7] and ultimately expressed by Congress in statutes governing carriers by rail,[8] water carriers,[9] and motor car-

3. Klaxon Co. v. Stentor Mfg. Co., 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S. Ct. 1023, 85 L.Ed. 1481.

4. Straus & Co. v. Canadian Pacific R. Co., 254 N.Y. 407, 173 N.E. 564; Restatement of Conflict of Laws and New York Annotations thereto, §§ 337, 338, 612. One of the statutory provisions relied upon by the Court of Appeals in the Straus case as symptomatic of New York's public policy was Personal Property Law, McK.Consol.Laws, c. 41, § 189, (§ 3 of the Uniform Bills of Lading Act, 4 Uniform Laws Annotated) which prevents a carrier from inserting in a bill of lading terms which are "contrary to law or public policy, or (b) In any wise impair his obligation to exercise at least that degree of care in the transportation and safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

5. The Civil Aeronautics Act became law on June 23, 1938, less than two months after the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

6. Since it is argued that Congress intended to give the Board exclusive authority, at least in the first instance, to validate tariffs, in the interest of expert and uniform Federal regulation of interstate air commerce, it is noteworthy that the Civil Aeronautics Act contains no provision which contemplates an action before the Board for damages for violation of the Act from which the Board might learn, in the first instance, via the complaints of disgruntled shippers and passengers, how well its regulations are working in practice. Compare 49 U.S.C.A. §§ 9, 13(1) providing for such a proceeding before the Interstate Commerce Commission, and 46 U.S.C.A. § 821 which authorizes a similar action before the Federal Maritime Board. See also text accompanying notes 22, 23 and 24 infra.

7. As to rail transportation, see cases cited in note 1, supra. As to water carriers, see Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 437–444, 9 S. Ct. 469, 32 L.Ed. 788; Calderon v. Atlas S. S. Co., 170 U.S. 272, 18 S.Ct. 588, 42 L.Ed. 1033; The Ansaldo San Giorgio I v. Rheinstrom Bros., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016.

8. The Carmack Amendment, 49 U.S.C.A. § 20(11).

9. 46 U.S.C.A. §§ 190, 191.

riers.[10] I do not see why the reasons for that rule—i. e., the encouragement of care on the part of the carriers, and the protection of shippers and passengers from imposition by the carriers—do not apply with equal force to transportation by air.[11] I would suppose that for those reasons, if Congress intended that uniform rules should govern interstate air commerce, Congress intended that the hitherto federal rule as to liability should govern here.

In one case, that of water carriers, Congress has undertaken to deal specifically with the carrier's liability for the loss of jewelry and other valuables, 46 U.S.C.A. § 181. It is noteworthy that, under that section, the carrier remains liable, as a bailee for hire, for losses caused by its own negligence,[12] although it is not liable as a carrier unless the shipper has given written notice of the character and value of the articles and has received a bill of lading for them. Furthermore, the section does not apply to articles worn on the person or carried in the hand baggage of passengers.[13] Even, then, where Congress has explicitly dealt with the loss of jewelry, the carrier has no statutory refuge from liability for the breach of its duty of due care which it owes to its passengers.

Defendant argues that, because of the peculiar character of air carriage, Congress must have intended to leave the Board free to approve the exculpatory provision. The argument is that an air carrier would be subjected to huge claims for the loss of jewelry in a passenger's bag, of which the carrier was unaware. To this there are several answers: (1) Railroads, motor carriers and water carriers are no different in this respect, yet they cannot relieve themselves of negligence-liability for the loss of jewelry.[14] (2) Defendant, with the Board's acquiescence, might have provided in its tariff (a) perhaps that it would not carry jewelry at all [15] or, (b) possibly, that its liability for any and all items contained in passengers' baggage would be limited to a certain, reasonable amount, unless the passenger gave notice of the presence of valuables in his baggage and paid an additional sum for its transportation.[16] But the defendant here did not so provide. It agreed to carry jewelry, but tried to stipulate against any liability whatsoever for its loss. For the reasons I have canvassed, I think that such a stipulation is invalid, and that the Board had no authority to legalize it.

B. *The so-called "exhaustion of administrative remedies."*

My colleagues assert that plaintiff may not maintain her suit until she has "exhausted her administrative remedies" by first obtaining a determination by the Board as to the reasonableness of the exclusion-of-all liability provision which the Board, it must be assumed, had previously approved.[17] But my colleagues concede

---

10. The Carmack Amendment has been expressly extended to cover motor carriers, 49 U.S.C.A. § 319.

11. Cf. Curtiss-Wright Flying Service v. Glose, 3 Cir., 66 F.2d 710, 712.

12. La Bourgogne, 2 Cir., 144 F. 781, 786, affirmed, 210 U.S. 95, 28 S.Ct. 664, 52 L. Ed. 973; Kuhnhold v. Companie Generale Transatlantique, D.C.S.D.N.Y., 251 F. 387.

13. The Minnetonka, 2 Cir., 146 F. 509, 512–513; La Bourgogne, 2 Cir., 144 F. 781.

14. Cf. Curtiss-Wright Flying Service v. Glose, supra, note 11.

15. Cf. Director General of Railroads v. Viscose Co., 254 U.S. 498, 502–504, 41 S. Ct. 151, 65 L.Ed. 372, where the Supreme

Court held that the validity of a similar provision in a railroad tariff should be determined, in the first instance, by the Interstate Commerce Commission.

16. Since a special statute, 46 U.S.C.A. § 181, was necessary to relieve water carriers from liability qua carriers for undeclared valuables in freight or hold baggage, it seems doubtful whether an air carrier might rid itself of its liability as a carrier in the absence of such a statute. In view of the construction accorded 46 U.S.C.A. § 181, it also seems doubtful whether, if there were such a statute applicable to air carriers, it would afford any comfort to defendant here. See notes 12 and 13 supra.

17. For excellent discussions of the niceties of "exclusive jurisdiction," "exhaustion of

that such resort to the Board, as a prerequisite to suit, is necessary only if the statute vested the Board with power, in general, to approve such a provision in the first place. Were that the case here, the issue would be whether the provision was reasonable; such an issue is usually of a technical character, calling for administrative discretion or specialized administrative knowledge relative to intricate questions of fact; and it is then desirable to attain uniformity through uniform administrative determinations. See, e. g., Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Great Northern Railway v. Merchants Elevator Company, 259 U.S. 285, 290–296, 42 S.Ct. 477, 66 L.Ed. 943; U. S. Nav. Co. v. Cunard SS Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408; Armour & Co. v. Alton R. Co., 312 U.S. 195, 197, 61 S.Ct. 498, 85 L.Ed. 771. However, with exceptions not here pertinent,[18] the Supreme Court has held that a plaintiff who asserts that administrative action is void, because in excess of the administrative body's statutory authority, may proceed directly in court without awaiting an administrative determination as to the validity of that administrative action. Especially does that seem to be true when the administrative body is not a party to the suit.[19] The rule may be different where the interpretation of the words of the statute conferring authority on the administrative agency involves the specialized experience of the agency itself.[20] But that is not the situation here.

Here, if my view is correct (i. e. that the Board plainly had no power to authorize this tariff provision) there is no room for so-called "expertise"; "uniformity" will be attained, if the lower courts disagree, through a decision by the Supreme Court. Many cases have so held. In Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 377, 63 L.Ed. 772, the court said: "But plaintiff does not contend that 75 cents is an unreasonably high rate, or that it is discriminatory, or that there was mere error in the action of the commission. The contention is that the commission has exceeded its statutory powers; and that, hence, the order is void. In such a case the courts have jurisdiction of suits to enjoin the enforcement of an order, even if the plaintiff has not attempted to secure redress in a proceeding before the commission." In Pennsylvania R. Co. v. International Coal Co., 230 U.S. 184, 197, 33 S.Ct. 893, 896, 57 L.Ed. 1446, the Court, holding that no recourse to the Commission was a necessary preliminary to suit, said of a classification in a tariff: "It could not have been legalized by any proof, nor could the commission by any order have made it valid." [21]

administrative remedies," and "primary jurisdiction," see 51 Harv.L.Rev. (1938) 1251; Barnhard, Primary Jurisdiction and Administrative Remedies, 30 Georgetown L.Rev. (1942) 545; 28 Calif.L.Rev. 129; 42 Am.Jur. Sections 194–202, 207–208, 251–255. See also C. A. B. v. Modern Air Transport, 2 Cir., 179 F.2d 622, 624–625.

18. E.g., where an administrative agency or officer seeks to enforce a subpoena directed to a prospective witness in, or party to, a proceeding before the agency or officer, especially when the determination of the jurisdiction of the agency or officer will turn on the interpretation of complicated facts. Myers v. Bethlehem Shipbuilding Company, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S. Ct. 339, 87 L.Ed. 424; cf. S. E. C. v. Long Island Lighting Co., 2 Cir., 148 F.2d

252, 259 ff. (dissenting opinion); West India Fruit & Steamship Co. v. Seatrain Lines, 2 Cir., 170 F.2d 775, 778–779.

19. Cf. 42 Am.Jur. 692 ff.

20. Cf. N. L. R. B. v. Hearst Publications Inc., 322 U.S. 111, 130–131, 64 S.Ct. 851, 88 L.Ed. 1170; Gray v. Powell, 314 U. S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Associated Industries v. Ickes, 2 Cir., 134 F.2d 694, 710–711; Duquesne Warehouse Co. v. Railroad Retirement Board, 2 Cir., 148 F.2d 473 at 486–488 (dissenting opinion).

21. For cases applying this doctrine or related doctrines, see Great Northern Railroad Company v. Merchants Elevated Company, 259 U.S. 285, 290, 292, 42 S. Ct. 477, 66 L.Ed. 943; Pennsylvania Railroad Co. v. Puritan Coal Mining Co., 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed.

Directly in point is Boston & Maine Railroad v. Piper, 246 U.S. 439, 445, 38 S.Ct. 354, 355, 62 L.Ed. 820. There the form of a bill of lading, approved by the Interstate Commerce Commission, contained a provision "that in the event of any unusual delay or detention of said livestock, caused by the negligence of the said carrier, * * * the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for said stock, while so detained." The Court said: "While this provision was in the bill of lading, the form of which was filed with the railroad company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body (Kansas City Southern Ry. Co. v. Carl, 227 U.S. 639, 654, 33 S.Ct. 391, 57 L.Ed. 683); but not so of conditions and limitations which are, as is this one, illegal, and consequently void."

The case at bar is not like Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372, cited by my colleagues. There the railroad's tariff provided that certain kinds of goods "will not be accepted for shipment." Here, as previously noted, defendant's tariff does not provide that it will not carry jewelry but that it "will be carried only at the risk of the passenger." The case of Mack v Eastern Airlines, Inc., D.C.Mass., 87 F. Supp. 113, 115, cited by my colleagues, is, I think, not in point. There the tariff provision in question did not relate to exclusion of liability for loss of goods but dealt with non-liability for failure to operate a scheduled flight without notice to passengers. Of this provision the Court said: "There can be no question that these Rules were within the authority conferred by the Civil Aeronautics Act * * *."

The tariff in the instant case seems to me to be much the same as one providing that no one with red hair was to be accepted as a passenger and that, if while a plane was in flight, such a red-headed person was discovered on board, the pilot should eject that person from the plane after supplying him with a parachute. No one would suppose that such a passenger, if so ejected, would have to go to the Board before bringing suit.

Perhaps, indeed, the case at bar would not be a proper case for advance administrative determination, even if it involved merely the reasonableness of the Board's action in approving this exculpatory provision. For, unlike the Interstate Commerce Act [22] or the Shipping Act,[23] the Civil Aeronautics Act confers no power on any administrative body to grant reparations for past misconduct of an air carrier.[24] 49 U.S.C.A. § 642, on which my colleagues

867; Penn. RR. v. Sonman Coal Co., 242 U.S. 120, 124, 37 S.Ct. 46, 61 L. Ed. 188; New York v. U. S., 257 U.S. 591, 600, 42 S.Ct. 239, 66 L.Ed. 385; Federal Power Commission v. Panhandle Co., 337 U.S. 498, 515, 69 S.Ct. 1251, 93 L.Ed. 1499; B. & O. R. Co. v. Brady, 288 U.S. 448, 457, 53 S.Ct. 441, 77 L.Ed. 888; Louis. & Nash. RR. v. Cook Co., 223 U.S. 70, 84, 32 S.Ct. 189, 56 L.Ed. 355; Reynolds v. U. S., 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353; Waite v. Macy, 246 U.S. 606, 608–609, 38 S.Ct. 395, 62 L.Ed. 892; Turner Dennis & Lowry Lumber Co. v. C. M. & St. Paul Ry., 271 U.S. 259, 262, 46 S. Ct. 530, 70 L.Ed. 934; W. P. Brown & Sons Lumber Co. v. L. & N. RR. Co., 299 U.S. 393, 399, 57 S.Ct. 265, 81 L.Ed. 301; Ogden City v. Armstrong, 168 U.S. 224, 240–241, 18 S.Ct. 98, 42 L.Ed. 444;

Varney v. Warehime, 6 Cir., 147 F.2d 238, 243; U. S. v. O'Donovan, 7 Cir., 178 F. 2d 876, 879.

22. 49 U.S.C.A. §§ 9, 13(1). To avoid deciding frivolous or moot questions, the Interstate Commerce Commission may refuse, in some circumstances, to give an opinion as to the validity of a tariff or practice until suit has been brought in a court. Cf. Bell Potato Chip Co. v. Aberdeen Truck Line Co., 43 MCC 337; U. S. v. I. C. C., 337 U.S. 426, 466, 467, 69 S.Ct. 1410, 93 L.Ed. 1451, note 13 (dissenting opinion).

23. 46 U.S.C.A. § 821.

24. See discussion of a similar problem in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692.

rely, authorizes a proceeding before the Board which may terminate in an order looking solely to the future, not to past conduct: The Board, under subsection (d), may determine that a classification or practice shall not "thereafter" be effective; it may, under subsection (f), make an order that an air carrier "discontinue" a classification or practice; it may, under subsection (g), "suspend" the operation of a classification or practice. In Public Utilities Commission v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396, the Court construed a state statute, worded almost the same as § 642, to authorize prospective administrative action only, and to preclude retroactive action. Consequently, were the plaintiff in this case to complain to the Board, it could do no more than to order the defendant to discontinue the use of the exemption provision. At most, plaintiff might perhaps obtain some incidental Board dictum that that provision had theretofore been improper. I seriously doubt, therefore, whether, even if the exculpatory provision is not void, § 642 requires plaintiff to procure such a prospective Board order as a condition of obtaining judicial relief. That doubt would seem particularly justified where, as here, no administrative skill or wisdom is needed to ascertain the reasonableness of the exculpatory provision.[25] However, I do not rest this dissent on such a doubt, since I think that in no circumstances could the Board authorize that provision.

If "exhaustion of administrative remedies" is demanded in a case like this, the result will be the exhaustion of litigants. To say that plaintiff's suit is premature suggests that a mature suit is a ripe one, and recalls Rabelais' Judge Bridlegoose: He insisted that litigation is like fruit which must not be picked until it has ripened; he explained that he long delayed each of his decisions because, as a consequence, neither party to any suit cared how it ended. But Bridlegoose was a French judge of a bygone era, and it is an ancient, but still prized, Anglo-American principle, embodied in the Bill of Rights of many of our States, that every citizen ought to obtain "justice promptly, and without delay." To postpone suit here until the Board considers whether it had authority is to indulge in a "delaying formalism,"[26] an "idle form,"[27] to require the sort of nugatory act with which courts dispense in all sorts of situations.[28]

### 2. The deviation.

The plaintiff, according to the stipulated facts, "purchased passage for herself and baggage over defendant's lines from Miami to Philadelphia," and, "in connection with her passage, delivered two bags * * * to the defendant Eastern for transportation to Philadelphia as checked baggage." One of these bags "was carried in error by defendant from Philadelphia to Newark" and there delivered to an unknown person without requiring the surrender of the baggage check which defendant had given to plaintiff in Miami. Thereafter the bag was returned to Eastern by a stranger whom defendant did not identify. When Eastern delivered the bag to plaintiff, the jewelry was missing. It was thus during that carriage of the bag beyond Philadelphia that plaintiff's jewelry was lost.

My colleagues have decided that, although the loss occurred as a result of defendant's negligence, during this over-carriage to Newark, the exculpatory provision

25. Cf. Great Northern Railway Company v. Merchants Elevator Company, 259 U. S. 285, 294–295, 42 S.Ct. 477, 66 L.Ed. 943; Schwartzman v. Southern Air Lines, D.C.Neb., 6 F.R.D. 517; U. S. v. Fritz Properties, D.C.Cal., 89 F.Supp. 772, 777–778; Barnhard, Primary Jurisdiction and Administrative Remedies, 30 Georgetown L.Rev. (1942) 545, criticizing Adler v. Chicago & Southern Air Lines, Inc., D.C.E.D.Mo., 41 F.Supp. 366.

26. See C. A. B. v. Modern Air Transport, 2 Cir., 179 F.2d 622 at page 625.

27. Judge Learned Hand in Procter & Gamble Distributing Co. v. Sherman, D. C.S.D.N.Y., 2 F.2d 165, 167.

28. See, e. g., Lovell v. City of Griffin, 303 U.S. 444, 452–453, 58 S.Ct. 666, 82 L.Ed. 949; Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 75 L.Ed. 1264; Montana Nat. Bank of Billings v. Yellowstone County, 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673.

constitutes a complete defense. I think that, even if that provision is valid, yet, as it was part of the contract of carriage to Philadelphia, it ceased to apply when defendant transported the bag beyond Philadelphia, the terminus of the voyage for which the parties contracted. For this is, I think, a case of "deviation," compounded, moreover, by the most palpable negligence.

To carriers by land as well as by sea, the doctrine has uniformly been applied that a deviation from the contracted voyage renders the carrier liable, notwithstanding provisions in the contract (whether expressly incorporated or via a tariff or a statute) restricting liability; the courts have held that a deviation is a breach of the contract going to its essence, so that the carrier loses its right to set up any contractual provisions which restrict its liability.[29] "Deviation" includes an "over-carriage" i. e., a shipment beyond the stipulated destination.[30] I see no reason, nor do my colleagues even intimate one, why these rulings do not apply to a carrier by air.

Here, we have a clear case of deviation by over-carriage, not, as in the cases cited by my colleagues and the district court, (Missouri Pac. RR. v. Boone, 270 U.S. 466, 46 S.Ct. 341, 70 L.Ed. 688; Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; American Ry. Express Co. v. Levee, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140), a misdelivery at the point of destination designated in the contract of carriage. This distinction, noted in the cases, was neatly made in General Electric Co. v. Argonaut SS. Line Inc., D.C.E.D.N.Y., 7 F.Supp. 710. There goods were shipped from New York to Wilmington, California; they were not delivered there, but were carried to San Francisco and then reshipped by the defendant steamship line to Los Angeles. The vessel en route to Los Angeles stranded, with a resulting total loss of the cargo, including the shipper's goods. The defendant relied on Bank of California, N. A., v. International Mercantile Marine Co., 2 Cir., 64 F.2d 97, where goods, shipped to Hamburg, Germany, arrived there and were misdelivered; and where, citing American Railway Express v. Levee, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140, this court held that the valuation clause in the bill of lading was applicable. The court in the General Electric case, however, decided against the shipping company on the basis of Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto, 2 Cir., 282 F. 235. There goods, carried beyond the agreed destination port, were lost through the sinking of the vessel, and it was held by this court that the failure to deliver the goods at the port named in the bill of lading was over-carriage, constituting a deviation which vitiated the provision of the bill of lading which limited liability. Here, furthermore, the jewelry was lost only because

29. See, e.g., St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral etc., 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201; Express Company v. Kountze Brothers, 8 Wall. 342, 352–353, 19 L.Ed. 457; Swift & Co. v. Furness, Withy & Co., D.C., 87 F. 345; Smith v. United States Shipping Board Emergency Fleet Corp., 2 Cir., 26 F.2d 337, 338–339, see further federal cases in next footnote; McKahan v. American Express Co., 209 Mass. 270, 95 N.E. 785, 35 L.R.A.,N.S., 1046; Saxon Mills v. New York, N. H. & H. R. Co., 214 Mass. 383, 101 N.E. 1075; Ward v. Gulf, M. & N. R. Co., 23 Tenn.App. 533, 134 S.W.2d 917, 921–922; O. K. Transfer & Storage Co. v. Neill, 59 Okl. 291, 159 P. 272, 274, L.R.A.1917A, 58; Benoit v. Central Vermont Ry., 116 Vt. 266, 73 A. 2d 321; Reynolds v. Adams Express Co., 172 N.C. 487, 90 S.E. 510, 511–512; Texas & P. Ry. Co. v. Eastin & Knox, 100 Tex. 556, 102 S.W. 105; Internationale Guano en Superphosphaat-Werken v. Robert Macandrew & Co. [1909], 2 K.B. 360; Joseph Thorley, Limited v. Orchis Steamship Company Limited [1907], 1 K.B. 660. See annotations in 35 L.R.A., N.S., 1046.

30. See, e.g., Calderon v. Atlas Steamship Co., D.C., 64 F. 874–875 (per Addison Brown, J.); affirmed, Calderon v. Atlas Steamship Co., 170 U.S. 272, 18 S.Ct. 588, 42 L.Ed. 1033; The Sarnia, 2 Cir., 278 F. 459, 461–463; Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto, 2 Cir., 282 F. 235–237; G. W. Sheldon & Co. v. Hamburg Amer. P.-A.-G., 3 Cir., 28 F.2d 249, 251; Pacific Coast Co. v. Yukon Independent Transport Co., 9 Cir., 155 F. 29.

the over-carriage was followed by a veritable tragedy of errors, on the part of the defendant, which was negligent, to put it mildly.

Defendant has not cited to us any provision in its tariff which indicates in any way that defendant was to be excused from liability in the event of a deviation. So it is needless, as to this phase of the case, to consider whether the Board has power to approve a tariff excluding such liability. Consequently, in this context, I do not understand my colleagues' reference to "the far-reaching effect of the principle of uniformity."

The tariff provided that defendant's liability for the loss of any baggage should be limited to $100, unless the passenger declared a higher value and paid an additional specified charge for each additional $100, in which event the actual value would be conclusively presumed not to exceed such higher value. That provision is doubtless valid. Plaintiff made no such declaration and paid no such extra charge. But I incline to believe that this valuation provision (as my colleagues apparently recognize) did not here apply since defendant's tariff provided that it was not liable in any amount for loss to plaintiff's jewelry. However that may be, this provision did not, I think, survive the deviation.